# MASTER LICENSE AGREEMENT

THIS MASTER LICENSE AGREEMENT ("Agreement") is entered into as of the 3rd day of October ("Effective Date"), by and between DODOcase, Inc. with offices at 2525 3rd Street, San Francisco, CA 94107 ("Licensor"), and MerchSource, LLC, with offices at 15 Cushing, Irvine, California 92618 ("MerchSource"). Licensor and MerchSource may each be referred in this Agreement as a "Party" or collectively as the "Parties."

## BACKGROUND

**WHEREAS**, Licensor is the record owner of certain patent rights as defined below as Licensed IP;

**WHEREAS**, MerchSource desires to manufacture and sell virtual reality viewer products having a capacitive touch input mechanism containing the Licensed IP;

**WHEREAS**, Licensor and MerchSource desire to enter into this Agreement to provide MerchSource with a master agreement under which MerchSource may obtain a royalty bearing right to make, use, sell, import and offer to sell certain Licensed Products under certain Licensed IP pursuant to business terms mutually agreeable to the Parties; and

**NOW, THEREFORE**, in consideration of the terms and conditions set forth in this Agreement, the Parties, each intending to be legally bound, agree as follows:

## 1. DEFINITIONS

As used in this Agreement, the following terms shall have the meanings set forth below:

1.1     "Licensed IP" shall mean U.S. Patent No. 9,420,075 issued August 16, 2016, entitled "VIRTUAL REALITY VIEWER AND INPUT MECHANISM" and any continuation or divisional patents thereof.

1.2     "Licensed Product(s)" shall mean those products sold by MerchSource incorporating the inventions claimed and protected by the Licensed IP.

1.3     "Royalty Rate" shall mean the royalty rate of five percent (5%) of Net Sales Price.

1.4     "Sale" or "Sold" shall mean when a Licensed Product is invoiced to a Third Party from MerchSource.

1.5     "Term Sheet" shall mean the document attached as Schedule A.

1.6     "Third Party" shall mean any person or entity that is not a party to this Agreement.

1.7     "Licensed Territory" shall mean worldwide.

1.8     "Affiliates" means any officer, director, manager, member, employee, agent of a Party, or any entity controlling or controlled by a Party.

1.9     "Net Sales Price" shall mean 95% of the gross sale price charged by Licensee for the Licensed Product(s).

1.10     "Guaranteed Minimum Royalty" ("GMR") shall mean a pre-paid and non-refundable royalty payment that royalties earned during the Initial Term are credited against. The GMR for the Initial Term shall be $100,000.00 and additional quarterly royalty payments will only become due once the royalties earned under this Agreement exceed the GMR.

1.11     "Initial Term" shall mean three (3) years from the Effective Date of the Term Sheet.

2.      **INTELLECTUAL PROPERTY LICENSE GRANT**

2.1      Licensor hereby grants to MerchSource a limited non-exclusive, revocable, worldwide, royalty-bearing license throughout the Licensed Territory under the Licensed IP to manufacture, have manufactured, use, have used, sell, have sold, offer to sell, distribute, import and have imported Licensed Products subject to the terms of this Agreement.

2.2      Licensor shall not grant to any Third Party a license to the Licensed IP for products that directly compete with the Licensed Product at a more favorable royalty rate to the Third Party and on similar terms hereby granted to MerchSource; provided however that, Licensor is free to offer or grant a more favorable royalty rate to a Third Party based on different business considerations of Licensor relating to the Third Party such as, without limitation, volume of sales or duration of the license, and other tangible and intangible benefits provided to Licensor. This license shall automatically terminate if the Licensed IP is ever provided free of charge by Licensor to any Third Party as an open source technology.

2.3      For the avoidance of doubt, Licensed Products include MerchSource's virtual reality viewer having a capacitive touch input mechanism, variations or derivatives thereof and any other of MerchSource's products, whether currently in existence, under development or created within the life of the Licensed IP, which are encompassed by the claims of the Licensed IP. Should MerchSource have a reasonable belief that any of its virtual reality viewer products that include an input mechanism are not encompassed by the Licensed IP, MerchSource shall provide Licensor with a sample of such product and detailed explanation of MerchSource's position at least thirty (30) days in advance of the launch of such product. The Parties agree to use reasonable and good-faith efforts in resolving any disagreement as to whether such product is encompassed by the claims of the Licensed IP. Should the Parties remain at an impasse after using reasonable good-faith effort to resolve such a disagreement, the parties will submit such dispute to binding arbitration.

2.4      All such licenses granted herein shall include the right of MerchSource to (i) allow customers to use the Licensed IP for the purpose of marketing, advertising, promoting and selling the Licensed Products; (ii) engage Third Party distributors to sell Licensed Products; and (iii) engage Third Party contract manufacturers to make Licensed Products by or on behalf of MerchSource.

3.      **PAYMENT**

3.1      In consideration for the license granted under this Agreement, MerchSource agrees to pay Licensor the Royalty Rate on all Licensed Products sold by MerchSource or its Affiliates. MerchSource further agrees to pay Licensor the GMR for the Initial Term upon execution of the Agreement by both parties.

3.2      All royalties calculated as set forth in Section 3.1 shall be paid by MerchSource quarterly within thirty (30) days after the end of each calendar quarter, and shall be accompanied by a written royalty report ("Royalty Report") reflecting the quantities of Licensed Products Sold by MerchSource during each such quarter, along with all information necessary to calculate the royalties in accordance with the Royalty Rates set forth in the respective Term Sheet for the Licensed Products. For avoidance of doubt, quarterly royalty reports shall be provided to Licensor even if no royalty payment is due to Licensor, for example, and without limitation, during the period in which royalties are being credited against the GMR.

3.3      All the payments to Licensor under this Agreement shall be made in US Dollars by wire to Licensor to the account of a bank to be designated by Licensor from time to time. Each party is responsible for all bank wire and/or transfer fees charged by their own bank in connection with any payment.

3.4      Licensor shall be responsible for paying all taxes associated with all payments made to Licensor under this Agreement.

3.5      For the avoidance of doubt, any Licensed Products sold prior to the Effective Date of this Agreement

are subject to payment of royalties pursuant to this Agreement.

3.6     Upon termination of this Agreement, MerchSource shall have no further obligation to pay any fees to Licensor under this Article 3, except for royalties owed under this Section 3 and for the sale of Licensed Products during the Sell-Off Period, as applicable.

## 4.     REPORTS, AUDIT AND RECORDS

4.1     Each Royalty Report shall show the quantity of each Licensed Product Sold by MerchSource and its Affiliates during the relevant calendar quarter, the total amount of each Licensed Product Sold, and the total royalties due to Licensor for sales in the relevant calendar quarter, and any other information necessary to calculate the royalties due in accordance with the Royalty Rates set forth herein.

4.2     MerchSource shall keep records of sales of Licensed Product by MerchSource for at least two (2) year following each royalty payment. Such records shall enable an independent auditor to confirm to Licensor the total royalties accrued and payable for each reporting period.  Upon reasonable notice, MerchSource shall permit such records to be inspected at the cost of Licensor during regular business hours by an independent auditor selected by Licensor and acceptable to MerchSource for this purpose, but only to the extent necessary to verify the amount of the royalties payable under this Agreement to Licensor.

4.3     Any underpayment that amounts to less than five percent (5%) of the royalties due in that reporting period will be included in the following quarter's royalty payment. Any overpayment shall be credited against future royalty payments. The auditor making such inspection shall be under obligations of confidence to MerchSource to keep all information of MerchSource confidential and shall only be permitted to provide Licensor with the information MerchSource is required to show on a royalty statement under this Agreement.  If any audit reveals an underpayment by MerchSource in excess of five percent (5%) of the royalties due in a reporting period, Merchsource shall have thirty (30) days to correct the underpayment and shall reimburse Licensor for the cost of the audit.

4.4     All books and records, or summaries thereof, relative to MerchSource's obligations under this Agreement shall be maintained and made accessible to Licensor for inspection at MerchSource's principal place of business in the State of California, United States, for at least two (2) year after each respective royalty payment.

## 5.     MERCHSOURCE'S INTELLECTUAL PROPERTY

5.1     The Parties agree that, as between the parties and with respect to the Licensed Products, Licensor's ownership rights are limited to the Licensed IP and MerchSource owns other intellectual property and other rights, title, and interest in the Licensed Products (including, for example, any artwork, photographs, packaging, molds or other tools used to create the Licensed Products) (collectively, "MerchSource's Intellectual Property"); and that MerchSource's use of the Licensed IP in connection with the Licensed Products does not and shall not grant Licensor any rights to MerchSource's Intellectual Property.

## 6.     INFRINGING ACTIVITY

6.1     Each Party may promptly notify the other of any material infringement of, or attack upon, any Licensed IP by a Third Party, as soon as the notifying Party learns of such infringement, and provide the other Party with any available evidence of such infringement or attack.

6.2     Licensor has the right in its sole discretion and at its own expense to prosecute any and all infringements of the Licensed IP, to defend all challenges to the validity and enforceability of the same, and to enter all settlements, judgments or other arrangements respecting the same, all at its own expense and liability and using counsel of its choice.

6.3     Licensor shall have the right to control such action and any damages or other monetary awards

recovered pursuant to this Article. Any damages or costs recovered through such proceeding shall belong exclusively to Licensor. Licensor shall, however, reimburse MerchSource for all reasonable expenses and costs incurred by MerchSource in connection with MerchSource's assisting Licensor, at Licensor's request, with such proceeding.

6.4     MerchSource shall not (a) attempt to challenge the validity or enforceability of the Licensed IP; or (b) directly or indirectly, knowingly assist any Third Party in an attempt to challenge the validity or enforceability of the Licensed IP except to comply with any court order or subpoena.

6.5     In the event that MerchSource notifies Licensor and provides supporting evidence of any material infringement of, or attack upon, any Licensed IP by a Third Party that is directly competitive to the Licensed Product, and Licensor decides not to provide notice of the Licensed IP to the Third Party, MerchSource shall work with Licensor to prepare a notice letter that MerchSource can use to notify the Third Party of the Licensed IP and Licensee's rights under the Licensed IP granted pursuant to Section 2.1 of this Agreement.

## 7.     CONFIDENTIALITY

7.1     Licensor and MerchSource agree to keep secret and confidential any and all information ("Confidential Information") either disclosed under this Agreement or through any prior disclosure, and not to disclose such Confidential Information to any person or entity, except (i) to employees, affiliates, attorneys, accountants, consultants, agents or representatives of each Party having a need to know the information in order to fulfill such Party's rights or obligations hereunder and (ii) to contractors, suppliers, potential investors, lenders or acquirers of the receiving Party who are subject to terms of confidentiality at least as restrictive as those set forth in this Article 6. The Parties shall use the Confidential Information solely for the purpose of carrying out the obligations contained in this Agreement.

7.2     The obligations imposed by this Section shall not apply to any Confidential Information: (i) which at the time of disclosure is in the public domain; (ii) which, after disclosure, becomes part of the public domain by publication or otherwise, through no fault of the receiving Party; (iii) which at the time of disclosure is already in the receiving Party's possession, except through prior disclosure by Licensor, MerchSource or an MerchSource affiliate, and such possession can be properly documented by the receiving Party in its written records, and was not made available to the receiving Party by any person or party owing an obligation of confidentiality to the disclosing Party; (iv) which is rightfully made available to the receiving Party from sources independent of the disclosing Party; (v) which is required to be disclosed in the course of litigation or other legal or administrative proceedings; or (vi) which is required to be disclosed by law or governmental agency; provided that in all cases the Party receiving the Confidential Information shall, to the extent permitted, give the other Party prompt notice of the pending disclosure and shall cooperate in such other Party's attempts, at such other Party's sole expense, to seek an order maintaining the confidentiality of the Confidential Information.

7.3     The obligation of confidentiality and nonuse set forth in this Article shall survive for the term of this Agreement or extensions thereof and for a period of two (2) years following the termination of this Agreement, so long as the information exchanged between the Parties remains confidential.

7.4     Confidential Information shall remain the exclusive property of the disclosing Party. In no event shall either Party's Confidential Information, technology, know-how, intellectual property (or rights thereto) become the property of the other Party.

## 8.     TERM AND TERMINATION

8.1     Term: This Agreement is effective as of the Effective Date set forth above, and shall remain in full force and effect for the duration of the Initial Term, unless earlier terminated as set forth in this Agreement.

8.2     This Agreement shall automatically terminate upon the expiration, lapse, or invalidity and

unenforceability of the Licensed IP.

8.3     This Agreement may be terminated by the non-breaching Party in the event that the other Party materially breaches this Agreement and said breach is not cured within thirty (30) of written notice of said breach by the non-breaching Party. If the breaching Party has not corrected the breach within such thirty (30) day period, the non-breaching Party may, at its election, immediately terminate the Agreement.

8.4     Termination of this Agreement shall cancel any and all rights under the Licensed IP granted to MerchSource pursuant to this Agreement.   The following provisions will survive termination of this Agreement: Sections 1 (Definitions), 2 (Payment, for Sales occurred during the Term and Sell-Off Period), 4 (Reports), 7 (Confidentiality), this section 8, and 13 (Miscellaneous).

8.5     Either Party may terminate this Agreement immediately if the other Party files or has filed against it a petition in bankruptcy or is adjudicated bankrupt or insolvent, or makes an assignment for the benefit of creditors, or discontinues or dissolves its business, or if a receiver in bankruptcy is appointed for either Party or its business and such receiver is not discharged within thirty (30) days.

8.1.5     Termination of this Agreement shall not cancel any obligations that may have accrued, nor preclude any remedy for a default which occurred prior to termination.

8.1.6     Upon termination of any Term Sheet or this Agreement for any reason, MerchSource shall be entitled, for eighteen (18) months (the "Sell-Off Period") after termination, to continue to sell any Licensed Product, that is the subject of a purchase order, is in transit to a customer or MerchSource, or is in inventory with MerchSource at the time of termination.  Such sales shall be made subject to all the provisions of the Agreement and any respective Term Sheet, including the payment of royalties which shall be due quarterly until the close of the Sell-Off Period.

## 9.    PATENT MARKING AND SAMPLES OF LICENSED PRODUCTS

9.1     Licensee agrees to mark all Licensed Products under this Agreement with such patent markings as specified in writing by Licensor and reasonably necessary to protect Licensor's rights under 35 U.S.C. §287(a).

## 10.    REPRESENTATIONS AND WARRANTIES

10.1     Each Party represents and warrants to the other that (i) such Party is a company or corporation duly organized, validly existing and in good standing under the laws of the jurisdiction in which it is organized; (ii) such Party has the legal power and authority to execute, deliver and perform this Agreement; (iii) the execution, delivery and performance by such Party of this Agreement has been duly authorized by all necessary corporate action; (iv) this Agreement constitutes the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms; and (v) the execution, delivery and performance of this Agreement will not cause or result in a violation of any law, of such Patty's charter documents, or of any contract by which such Party is bound.

10.2     Each Party represents and warrants to the other Party that the execution and delivery of this Agreement and the performance of such Party's obligations under this Agreement (i) does not conflict with or violate any requirement of applicable laws or regulations or any material contractual obligation of such Party and (ii) does not materially conflict with, or constitute a material default or require any consent under, any material contractual obligation of such Party.

10.3     Licensor represents and warrants that it has the right and power to grant the license granted under this Agreement to MerchSource and that there are no other agreements with any other Third Party in conflict with such grant.

10.4     Nothing in this Agreement shall be construed as: (a) a warranty or representation by either Party as to the validity or scope of the Patent; (b) a warranty or representation by Licensor that any manufacture, use, sale or

importation of Licensed Products will be free from infringement of Third Party intellectual property rights; or (c) limiting the rights which the Parties have outside the scope of the license granted hereunder.

10.5    Licensor further represents and warrants that it is the sole and exclusive owner of the Licensed IP and that it has the authority to transfer all rights and licenses to MerchSource under this Agreement without the consent of any Third Party.

10.6    Licensor further represents and warrants that to the best of its knowledge, the Licensed IP is valid, enforceable, does not infringe any Third Party's patent rights and was not misappropriated from any Third Party.

10.7    MerchSource shall be solely responsible for the manufacture, production, sale and distribution of the Licensed Products and will bear all costs associated therewith.

## 11.    INDEMNITY

11.1    MerchSource agrees to defend, indemnify and hold harmless Licensor and its respective agents, employees, officers, directors and representatives from and against any and all costs, expenses, liabilities, claims, damages, demands, actions, judgments, awards, settlements, losses and fees, including reasonable attorneys' fees and costs ("Liability"), based on Third Party claims arising out of (i) personal injury or property damage resulting from the marketing, sale or use of any Licensed Product, or (ii) MerchSource's breach of this Agreement or any representations and warranties contained in this Agreement, or (iii) third party claims against MerchSource or Licensor for patent, copyright, and/or trademark infringement  to the extent that any enumerated infringement claims are exclusively related to MerchSource's sale of the Licensed Products.

11.2    Licensor agrees to defend, indemnify and hold harmless MerchSource, its affiliates and their respective agents, employees, officers, directors and representatives harmless from and against any and all Liability based on Third Party claims solely arising out of (i) Licensor's breach of this Agreement or any representations and warranties contained in this Agreement.

11.3    Upon receiving notice of any claim for Liability under this Article, the indemnified Party shall promptly notify the indemnifying Party in writing; provided, however, that failure to give notice shall not limit or otherwise reduce the indemnification provided for in this Agreement. The indemnified Party shall use commercially reasonable efforts to mitigate the effects of such claim and shall reasonably cooperate with the indemnifying Party in the defense of such claim. The indemnifying Party may, in its sole discretion and at its sole cost, and upon agreement of the indemnified Party, assume and conduct the legal defense of the indemnified Party in any suit that could result in claims under this provision, which such conduct shall include the authority to settle any such claim.

## 12.    LIMITATION OF LIABILITY

12.1    EXCEPT FOR BREACH OF CONFIDENTIALITY UNDER ARTICLE 7 AND INDEMNITY OBLIGATIONS UNDER ARTICLE 11, UNDER NO CIRCUMSTANCES WILL EITHER PARTY BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, SPECIAL, PUNITIVE OR INCIDENTAL DAMAGES OR LOST PROFITS OR LOSS OF USE DAMAGES, WHETHER FORESEEABLE OR UNFORESEEABLE, EVEN IF IT HAS PREVIOUSLY BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, ARISING OUT OF BREACH OR FAILURE OF EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, MISREPRESENTATION, NEGLIGENCE, STRICT LIABILITY IN TORT OR OTHERWISE.

## 13.    MISCELLANEOUS TERMS

13.1    Licensor agrees to permit MerchSource to secure by a security interest in whole or part the Licensed Products or equipment related to the manufacturing thereof. Granting such a security agreement shall not be deemed a breach of this Agreement by MerchSource, nor shall it be deemed an assignment for the benefit of creditors that will cause termination of this Agreement. As reasonably requested, Licensor shall expressly consent to MerchSource

granting such a security interest in the Licensed Product or equipment to a lender. Notwithstanding anything herein to the contrary notwithstanding, Licensor acknowledges that a security interest in Licensed Product may be granted to a MerchSource lender(s) (the "Lenders") in Licensed Products and consents to any disposition by an agent of the Lenders in the exercise of remedies of Lenders or their agents under or in any respective loan and security agreement or pursuant to applicable law. Licensor agrees, if reasonably requested by the Lender or MerchSource, to execute and deliver to the Lender a separate letter confirming the foregoing acknowledgment of such security interest and the foregoing consent to any such disposition.

13.2    Licensee will not form any entities to avoid compliance with any of the provisions of this License Agreement, and shall not, directly or indirectly, knowingly assist any Third Parties in engaging in any activities designed to avoid Royalties that are owing hereunder. Licensor shall reasonably cooperate with MerchSource in obtaining any clearances from governmental agencies to market the Licensed Products.

13.3    Notices or other communications required or permitted by this Agreement shall be given in writing, and shall be deemed to have been given on the day following delivery of such notice to a major overnight delivery service, or on the date of any acknowledgement or confirmation of receipt if sent by first class mail, certified mail, facsimile or by email. All notices shall be addressed to the Parties as follows:

> To Licensor:
>
> DODOcase, Inc.
> 2525 3rd Street
> San Francisco, CA 94107
> Attn: Craig Dalton
> Tel.: (877 ) 920 -3636
> email: craig@dodocase.com
>
>
> To MerchSource:
>
> MerchSource, LLC
> 15 Cushing
> Irvine, CA 92618
> Attn: Member
> Tel: (949) 900-8669
> email: legal@ merchsource.com
>
> with copy to:  General Counsel of MerchSource at the same address above.

13.4    The laws of the State of California shall govern any dispute arising out of or under this Agreement, notwithstanding the conflict of laws principles of the State of California. BOTH PARTIES AGREE TO EXCLUDE THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS UNDER THIS AGREEMENT AND ANY TRANSACTION BETWEEN THE PARTIES THAT MAY BE IMPLEMENTED IN CONNECTION WITH THIS AGREEMENT. THE PARTIES AGREE THAT THE SUBJECT MATTER AND PERSONAL JURISDICTION ARE PROPER IN THE COURTS LOCATED IN SAN FRANCISCO COUNTY OR ORANGE COUNTY, CALIFORNIA AND THAT DISPUTES SHALL BE LITIGATED BEFORE THE COURTS IN SAN FRANCISCO COUNTY OR ORANGE COUNTY, CALIFORNIA.

13.5    This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto, their heirs, administrators, successors and assigns.

13.6    Licensee shall have no right to assign, sell, or otherwise transfer any right or benefit hereunder without the consent of Licensor, except that in connection with the sale, assignment or transfer to a person (e.g., individual,

corporation, partnership, venture, estate, trust, association, entity, governmental body or governmental authority) who acquires or otherwise succeeds to (whether by merger, acquisition of stock or assets, or otherwise) all or at least a majority of Licensee's assets or business, no consent shall be necessary and this Agreement can be assigned at the sole discretion of Licensee to such person.

13.7    No waiver by either Party of any default shall be deemed as a waiver of any prior or subsequent default of the same or other provisions of this Agreement.

13.8    In the event that any provision of this Agreement shall be determined to be illegal or unenforceable, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

13.9    With respect to the subject matter of this Agreement, this Agreement shall constitute the entire understanding of the Parties, and revoke and supersede all prior agreements between the Parties and are intended as a final expression of their Agreement. To the extent that there is any conflict between this Agreement and a Term Sheet governed by this Agreement, the terms and conditions of the Agreement shall govern.

13.10    This Agreement shall not be modified or amended except in writing signed by the Parties hereto and specifically referring to this Agreement. This Agreement shall take precedence over any other documents which may be in conflict herewith.

13.11    In the event litigation or other dispute resolution process is necessary to enforce a provision or provisions of this Agreement, all costs, expenses and attorneys' fees shall be awarded to the prevailing Party.

13.12    This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute but one and the same Agreement.

13.13    Licensor is permitted to sell, assign, or otherwise transfer the Licensed IP without Licensee's consent to any Third Party provided that the rights and obligations set forth in this Agreement shall run with title to the Licensed IP and shall bind any assignee or other person who acquires an interest in the Licensed IP through assignment, conveyance, grant or otherwise.

13.14    Nothing in this Agreement is intended to confer upon any Person, other than the Parties, their respective Affiliates and their respective successors and assigns, any rights, remedies, obligations or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

13.15    The Parties are independent contractors and not partners, joint venturers, or agents of the other. Neither Party assumes any liability of or has any authority to bind, or control the activities of, the other.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement through their duly authorized representatives to be duly executed as of the Effective Date.

DODOcase, Inc.

By: _____
DocuSigned by:
_BD3BB75A7AB0442...
Name:   Craig Dalton
Title:   President and CEO
Date:    10/4/2016

MerchSource, LLC

By: _____
Name:   Adam Gronntin
Title:   President
Date:    10/4/2016

Schedule A

(Fully Executed Copy of "DODOcase/Merchsource License Agreement Term Sheet;" Doc No. 10101/808000-000/01543657.1)

# LICENSE TERM SHEET

This License Term Sheet ("Term Sheet") is entered into as of the 20th day of July, 2016 ("Term Sheet Effective Date") by and between DODOcase, Inc. with offices at 2525 3rd St, San Francisco, CA 94107 ("Licensor"), and MerchSource, LLC, with offices at 15 Cushing, Irvine, California 92618 ("Licensee"). Both Licensee and Licensor may be referred to herein individually as "Party" or collectively as "Parties". Licensor and Licensee mutually agree to memorialize the business terms set out below and enter into a Master License Agreement (the "Agreement") to solidify these business terms within two months of the Term Sheet Effective Date. All terms that are not defined in this Term Sheet shall be set forth in the Agreement. This Term Sheet is being entered into by the Parties for the purpose of granting Licensee a non-exclusive license to a certain Licensed Patent under the terms below. This Term Sheet memorializes the agreement in principal as negotiated by the Parties and is subject to the terms and conditions set forth in the Master License Agreement.

| | |
|---|---|
| Licensed Patent(s): | U.S. utility patent issued from application number 14/801,606. |
| Channels of Trade: | All channels. |
| Royalty Rate: | Five percent (5%) of Net Sales |
| Net Sales: | 95% of gross sales |
| Guaranteed Minimum Royalty (GMR) for Initial Term: | Upon execution of the Agreement by both parties, Licensee will pay Licensor $100,000.00 pre-paid royalties to satisfy the GMR for the entire Initial Term. |
| Pre-Payment: | The $100,000.00 pre-payment of GMR is non-refundable and will be credited against royalties earned during the Initial Term and additional quarterly royalty payments will only become due once the royalties earned exceed the pre-paid GMR. |
| Cross-Collateralized: | Pre-payment of the GMR will be credited against royalties earned during any year of the Initial Term. |
| Initial Term: | Three (3) years |
| Patent Markings: | Subject to the terms and conditions of the Agreement to be entered into by the parties Licensee is required to mark both the product and packaging with "PATENT PENDING" or the patent number U.S. 9,420,075 on any product utilizing the patented technology, for the avoidance of doubt, products manufactured after the issue date shall be marked with the patent number U.S. 9,420,075, products manufactured prior to the issue date can be marked "PATENT PENDING." |
| Patent Validity: | The Agreement is contingent on the existence of a valid and enforceable Licensed Patent being issued by the USPTO and maintained by Licensor. |

This Term Sheet is governed by the terms of the Agreement.  To the extent there are any actual or apparent inconsistencies between the Term Sheet and the Agreement, the Agreement shall control.  Amendments to this Term Sheet are only valid if signed by a duly authorized representative of each Party.

IN WITNESS WHEREOF, the Parties hereto have caused this Term Sheet through their duly authorized representatives to be duly executed as of the Term Sheet Effective Date.

DODOcase, Inc.

By: _____

Name:  Craig Dalton

Title:  President and CEO

MerchSource, LLC

By: _____

Name: Adam Gromfin

Title: President