UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DODOCASE VR, INC., | Case No.17-cv-07088-EDL |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| MERCHSOURCE, LLC, et al., | |
| Defendants. | Re: Dkt. No. 24 |

On February 16, 2018, Plaintiff Dodocase VR, Inc. filed a motion for a temporary restraining order or preliminary injunction against Defendants MerchSource, LLC ("MerchSource") and ThreeSixty Brands Group LLC ("ThreeSixty") (together, "Defendants"). Specifically, the motion requests a Court order requiring Defendants to withdraw the petitions filed with the Patent Trial and Appeal Board ("PTAB Petitions") on January 15, 2018, which seek a determination that the patents that are the subject of this litigation are invalid. Defendants opposed the motion on February 27, 2018, and Plaintiff filed its reply on March 1, 2018. The Court held a hearing on March 6, 2018. For the reasons stated on the record during the hearing and for those set forth below, the Court GRANTS Plaintiff's motion for a preliminary injunction and ORDERS Defendants, and in particular MerchSource as the filing entity and real-party-in-interest ThreeSixty as necessary, to (1) send the email to the PTAB by Sunday March 25, 2018 requesting a conference call to facilitate the withdrawal of the PTAB Petitions, and (2) if the PTAB grants permission to file motions to dismiss the petitions, file the motions by 12:00 p.m. on April 3, 2018. The content of the email and motions to dismiss must comply with the requirements discussed below. Plaintiff need not post a bond for the reasons explained below.

## I.    BACKGROUND

On December 13, 2017, Plaintiff filed its original complaint seeking declaratory judgment

and injunctive relief. Dkt. No. 1. Plaintiff manufactures accessories for mobile devices, including virtual reality accessories for smartphones. Id., ¶¶ 6, 7. Plaintiff has been awarded multiple patents for its virtual reality accessories, including three patents that are at issue in this case. Id., ¶ 9. Those three patents are United States Patent No. 9,420,075, entitled "Virtual Reality Viewer and Input Mechanism," issued August 16, 2016 (the "'075 Patent"); United States Patent No. 9,723,117, entitled "Virtual Reality Viewer and Input Mechanism," issued on August 1, 2017 (the "'117 Patent"); and United States Patent No. 9,811,184, entitled "Virtual Reality Viewer and Input Mechanism," issued on November 7, 2017 (the "'184 Patent"). Id. The complaint refers to these three patents collectively as the "Dodocase Patents." Id. The original complaint sought: (1) a declaration that certain Dodocase Patents are valid and enforceable; and (2) an injunction against Defendants from breaching the patent license agreement between Defendants and Plaintiff. Id., ¶ 4.

MerchSource designs, sources, and distributes a wide-range of consumer goods, including toys, electronics, and home decor, to large retailers. Id., ¶ 11. MerchSource is wholly owned by ThreeSixty. Id., ¶ 14. Plaintiff alleges that MerchSources sells, manufactures, designs, and/or imports certain products under the brand name "Sharper Image" that threaten to infringe the Dodocase Patents. Id., ¶ 12.

On or about June 16, 2016, MerchSource contacted Plaintiff about obtaining a license to the '075 Patent. Id., ¶ 21. Subsequently, on or about October 3, 2016, MerchSource and Plaintiff entered into a Master License Agreement regarding the Dodocase Patents ("MLA"). Id., ¶ 22. The MLA states that "MerchSource desires to manufacture and sell virtual reality viewer products having a capacitive touch input mechanism containing the Licensed IP." Id., ¶ 23. The MLA also provides that "MerchSource shall not (a) attempt to challenge the validity or enforceability of the Licensed IP; or (b) directly or indirectly, knowingly assist any Third Party in an attempt to challenge the validity or enforceability of the Licensed IP except to comply with any court order or subpoena." Id., ¶ 28. Further, the MLA includes the following forum selection provision: "THE PARTIES AGREE . . . THAT DISPUTES SHALL BE LITIGATED BEFORE THE COURTS IN SAN FRANCISCO COUNTY OR ORANGE COUNTY, CALIFORNIA." Dkt. No.

34, § 13.4 (emphasis in original). Further, "[t]he laws of the State of California shall govern any dispute arising out of or under this Agreement . . . " Id.

Starting on or about June 9, 2017, MerchSource began contacting MerchSource to express dissatisfaction with the MLA. Id., ¶ 24. On or about July 10, 2017, MerchSource told Plaintiff that in light of its perception that Plaintiff was not enforcing its intellectual property sufficiently, MerchSource would "have no choice but to impute a zero percent royalty rate under the [MLA] in order to be similarly advantaged." Id., ¶ 25. On October 5, 2017, MerchSource told Plaintiff that it reviewed the claims in the patent application for what would later become the '184 Patent and determined that the relevant claims were invalid, so it would not pay any royalties on the products sold under that patent. Id., ¶ 27. Plaintiff responded that refusal to pay royalties despite its continued manufacture, use, sale, and/or offer for sale of products using the Dodocase Patents constituted a breach of the MLA. Id., ¶ 29. One day after the deadline to cure the breach, on November 17, 2017, MerchSource provided a royalty check and royalty report. Id., ¶ 32.

On December 22, 2017, Defendants filed a motion for an extension of time to answer or otherwise respond to the complaint. Dkt. No. 14. In their motion, Defendants stated that they required more time to investigate the complaint's allegations, in part due to the fact that the twenty-one day answer period under Rule 12 included the year-end holidays and relevant MerchSource personnel and its attorneys had previously scheduled travel, holiday, and vacation plans during that time. Id. The Court granted Defendants' request for a twenty-nine day extension over the objection of Plaintiff. Dkt. Nos. 15 & 18.

On January 12, 2018, counsel for Plaintiff and Defendants held a telephone conference to discuss potential resolution of this case, including renegotiation of the MLA's royalty option. Johnson Decl., ¶ 3; Mot. at 4. Before the meeting, Defendants' counsel asked Plaintiff to sign a non-disclosure agreement to allow MerchSource to keep the discussions confidential and to provide information and documents, including the draft PTAB Petitions, that it considered to be protected by privilege or attorney work product. Id., ¶ 4-5. According to Plaintiff, it did not execute the non-disclosure agreement because it believed that such an agreement would be unethical in light of Plaintiff's obligations of disclosure to the Patent Office for continuing

applications and in future licensing discussions or litigation with third parties. Mot. at 4.

Although Plaintiff did not sign the non-disclosure agreement, the parties still held the scheduled meeting. Johnson Decl., ¶ 9. They could not, however, reach agreement on resolution, and Defendants stated that they were prepared to file challenges to the Dodocase Patents with the PTAB. Johnson Decl., ¶ 6. On January 15, 2018, Defendants identified the three alleged prior art references for Plaintiff for the first time. Id., ¶ 12. Plaintiff reviewed the information and told Defendants that they did not think the alleged prior art supported their claim of invalidity. Mot. at 4.

Defendants then filed three separate PTAB Petitions, challenging each of the three Dodocase Patents, on January 15, 2018. Dkt. No. 23, Am. Compl., ¶ 52. The PTAB Petitions rely on the same three "primary references": (1) U.S. Patent Publication No. 2013/0141360, which issued as U.S. Patent 9,423,827 ("Compton"); (2) a comment posted on a blog entitled, "Why Google Cardboard is Actually a Huge Boost for Virtual Reality" ("Gigaom"); and (3) a YouTube video entitled, "Use Google Cardboard without Magentometer (Enabling Magnetic Ring Support to Every Device)" ("Tech#"). Id., ¶ 52. Plaintiff alleges that none of these alleged prior art references invalidate the Dodocase Patents. Id., ¶¶ 54-62.

On February 2, 2018, Defendants answered the complaint and filed a counterclaim against Plaintiff. Dkt. No. 22. The counterclaim sought declaratory judgment that each of the three Dodocase Patents is invalid for at least the reasons set forth in the PTAB Petitions. Id., Counterclaim, ¶¶ 6-26.

As a result of the failed negotiations, the PTAB Petitions, and Defendant MerchSource's failure to make their royalty payment for the fourth quarter of 2017, Plaintiff terminated the MLA on February 14, 2018. Am. Compl., ¶¶ 50-51. Plaintiff filed an amended complaint that alleged that MerchSource further breached the MLA after the original complaint by: (1) filing PTAB petitions in contravention of the MLA's venue and "no-challenge" provisions and disclosing alleged prior art for the first time in support of that challenge on January 15, 2018; (2) failing to make its required royalty payment on January 30, 2018; and (3) failing to provide assurances that its marking obligations would be satisfied with respect to the newly-issued '117 and '184 Patents.

4

Id., ¶ 4.  Plaintiff alleges that MerchSource took these actions in an attempt to obtain a more favorable royalty rate.  Id., ¶ 5.  Plaintiff's amended complaint included a claim for breach of contract and/or infringement against MerchSource.  Id., ¶¶ 86-109.

Two days later, on February 16, 2018, Plaintiff filed this motion for a temporary restraining order or preliminary injunction.  Dkt. No. 24.  Defendants filed an amended answer and counterclaim on February 28, 2018.  Dkt. No. 31.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides federal courts with the authority to issue temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65(a)-(b).  An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008); see also Munaf v. Geren, 553 U.S. 674, 689-90 (2008).  The same general legal general standards govern the issuance of temporary restraining orders and preliminary injunctions.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction preserves the status quo and the rights of the parties until a final judgment on the merits can be rendered.  See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 439 (1974); U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1093-94 (9th Cir. 2010).  A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted) (emphasis in original).

A "prohibitory" injunction restores the status quo as it existed before the controversy at issue arose.  See Pac. Sunwear of Cal. Inc. v. KP Fashion Co., 2009 WL 10670246, at *6 (C.D. Cal. Mar. 20, 2009) (finding that the plaintiff was seeking a prohibitory injunction to stop the defendant from infringing its trademarks, therefore restoring the status quo as it existed before the alleged infringement) (citing Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994) (holding that a prohibitory injunction preserves the status quo *ante litem*); GoTo.com, Inc. v. Walt

Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo *ante litem* refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy' . . . ") (citation omitted)). By contrast, a mandatory injunction goes beyond restoring the status quo that preceded the dispute and "orders a responsible party to 'take action.'" Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015) (quoting Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009) (citation omitted)). The Ninth Circuit has held that mandatory injunctions, "which go[ ] well beyond simply maintaining the status quo [p]endente lite, [are] particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979) (quoting Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)). See also Garcia, 786 F.3d at 740.

A plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. Winter, 555 U.S. at 20. Alternatively, the plaintiff may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (quoting Clear Channel Outdoor, Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.  DISCUSSION

Plaintiff seeks an order requiring Defendants to withdraw the three PTAB Petitions that they filed on January 15, 2018 concerning the Dodocase Patents that are at issue in this case. Plaintiff contends that the PTAB Petitions were filed in violation of the "no-challenge" and "forum selection" clauses in the MLA.

### A.  Likelihood of Success

Plaintiff argues that it is likely to prevail based on the "no challenge" or the forum selection clause of the MLA.

### 1.   "No-Challenge" Clause

The MLA's "no-challenge" clause provides that a licensee may not challenge the validity of the licensed patent:

> MerchSource shall not (a) attempt to challenge the validity or enforceability of the Licensed IP; or (b) directly or indirectly, knowingly assist any Third Party in an attempt to challenge the validity or enforceability of the Licensed IP except to comply with any court order or subpoena.

Dkt. No. 34, MLA, § 6.4.

Plaintiff attempts to distinguish Lear, Inc. v. Adkins, 395 U.S. 653 (1969), which rejected the patent licensee estoppel doctrine and held that a licensee who repudiates a patent license agreement has the right to challenge the validity of any licensed patent, rendering "no-challenge" clauses unenforceable. Id. at 673. More recently, the Supreme Court held that a licensee can challenge the validity of a licensed patent without repudiating the contract when it continues to fulfill its contractual duty to pay royalties. See Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 135 (2007).

Lear sets forth the policy weighing against enforcement of restrictive contract provisions in patent licenses in this often cited passage:

> Surely the equities of the licensor do not weigh very heavily when they are balanced against the important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain. Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest in the typical situation involving the negotiation of a license after a patent has issued.

Lear, 395 U.S. at 670-71. Plaintiff argues that the public policy that underlies Lear and its progeny is not present here because Defendants requested that Plaintiff enter into a non-disclosure agreement before they would share alleged prior art with Plaintiff during the course of unsuccessful settlement negotiations. Therefore, Plaintiff argues, Defendants rejected a public challenge of the validity of the Dodocase Patents when they sought to obtain a confidential settlement from Plaintiff that would have shielded the alleged prior art from public view.

7

It is of little surprise that Defendants should try to keep their settlement negotiations confidential and subject to a non-disclosure agreement, as confidential settlement negotiations are the norm. (The tongue-in-cheek expression of "shock" in the film Casablanca comes to mind.) What matters for purposes of this analysis is that Defendants ultimately went public with their claims of invalidity by filing the PTAB Petitions. MerchSource, as a licensee with an economic incentive to challenge the patents once it could not successfully renegotiate the license, cannot be enjoined under principles of equity from mounting these validity challenges by enforcement of the "no-challenge" clause.

### 2. Forum Selection Clause

Alternatively, Plaintiff contends that Defendant MerchSource's breach of the MLA's forum selection clause supports its motion for injunctive relief. The forum selection clause provides: "THE PARTIES AGREE . . . THAT DISPUTES SHALL BE LITIGATED BEFORE THE COURTS IN SAN FRANCISCO COUNTY OR ORANGE COUNTY, CALIFORNIA." MLA, § 13.4 (emphasis in original). It also states that "The laws of the State of California shall govern any dispute arising out of or under this Agreement . . . " Id. Plaintiff argues that the concerns expressed in Lear about balancing the public right to freely use inventions that do not have valid patents against the private right to contract are not present when considering Defendant MerchSource's alleged breach of the forum selection clause, because the forum provided by the MLA is an adequate forum to challenge the validity of the Dodocase Patents. Lear did not consider a request for injunctive relief on the basis of an alleged breach of a forum selection clause, so Lear is not dispositive of this motion.

Defendants do not argue otherwise, but instead contend that Plaintiff cannot meet its burden under the four-prong Winter test on its claim that Defendant MerchSource breached the forum selection clause when it filed the PTAB Petitions. For the following reasons, Plaintiff has met its burden on the likelihood of success.

### a. Exclusivity of Forum Selection Clause

In evaluating whether Plaintiff is likely to be successful in its breach of contract claim, the threshold question, which was not raised by Defendants in opposing this motion, is whether the

forum selection clause at issue is mandatory or permissive, i.e., whether Defendant MerchSource agreed that the courts of San Francisco and Orange Counties are the sole fora to litigate disputes, or only that it would not contest the jurisdiction of those courts in the event that a dispute was filed there.

Defendants waived any argument of nonexclusivity by not raising it. The Court will nonetheless address it and concludes that even if Defendants had not waived the argument, Defendants were well advised not to raise it because it would have failed. Federal law governs the interpretation of forum selection clauses. See Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509 (9th Cir. 1988). Courts look to "general principles for interpreting contracts." Cnty. of Santa Clara v. Astra United States, Inc., 588 F.3d 1237, 1244 (9th Cir. 2009), rev'd on other grounds, 563 U.S. 110 (2011). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 12010 (9th Cir. 1999) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co, Inc., 896 F.2d 1542, 1549 (9th Cir. 1989)); see also Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987). A written contract "must be read as a whole and every part interpreted with reference to the whole." Shakey's Inc. v. Covalt, 704 F.2d 426, 434 (9th Cir. 1983) (citation omitted). "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." Id.

In Hunt Wesson, the Ninth Circuit held that the following forum selection clause was permissive, explaining that "in cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required *exclusive* jurisdiction:"

> Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract. The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.

Hunt Wesson, 817 F.2d at 76-77. Two years later, in Docksider Ltd. v. Sea Tech., Ltd., 875 F.2d 762 (9th Cir. 1989), the Ninth Circuit distinguished Hunt Wesson when it held that the following forum selection clause was mandatory:

9

> This agreement shall be deemed to be a contract made under the laws of the State of Virginia, United States of America, and for all purposes shall be interpreted in its entirety in accordance with the laws of said State. Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia. Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia.

Id. at 763-64. In holding that this forum selection clause was mandatory and jurisdiction was exclusive to the courts of Gloucester County, Virginia, although it did not expressly cite the terms "exclusive" or "solely," the Ninth Circuit explained that "[t]his mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county. Thus, whether or not several states might otherwise have jurisdiction over actions stemming from the agreement, all actions must be filed and prosecuted in Virginia." Id. at 764. By contrast, the court confirmed that "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." Id. (citing Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 956 (5th Cir. 1974) ("This agreement shall be construed and enforced according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York," held permissive and not a mandatory forum selection clause); Manetti-Farrow, 858 F.2d at 511 ("For any controversy regarding interpretation or fulfillment of the present contract, the Court of Florence has sole jurisdiction," held mandatory and enforced)).

While the MLA's forum selection clause is distinguishable from Docksider because it does not explicitly specify venue, it is also distinguishable from the provisions at issue in Hunt Wesson and Keaty because it does not merely state that the courts in San Francisco and Orange Counties have jurisdiction. Instead, it states that "disputes *shall* be litigated" (emphasis added) in those courts, mandatory language akin to an express statement of exclusivity. Considered as a whole, the Court concludes that the MLA's forum selection language stating not only that the parties agreed that subject matter and personal jurisdiction are proper in the courts in San Francisco and Orange Counties, but also that disputes "shall be litigated" in those courts, make this a mandatory forum selection clause. Defendants did not argue otherwise.

b. **Scope of the Forum Selection Clause**

One of the parties' main disputes over the likelihood of success prong is whether the forum selection clause extends to PTAB proceedings. Defendants argue that the venue selection clause simply does not apply to the PTAB proceedings because they have nothing to do with the license agreement. Plaintiff, unsurprisingly, argues the opposite.

Defendants contrast the facts of this case with the facts in Manetti-Farrow, in which the Ninth Circuit held that the forum selection clause in an exclusive dealership contract governed both tort and contract claims. The exclusive dealership contract provided that disputes under the contract would be litigated in Florence, Italy. Manetti-Farrow, 858 F.2d at 511. The plaintiff brought several tort-based claims against the defendants in federal court in California based on their allegedly wrongful termination of the dealership contract. Id. at 511-12. The district court held that the claims were all covered by the forum selection clause and dismissed the case because the claims needed to be litigated in Italy. Id. The Ninth Circuit upheld the dismissal, concluding that the forum selection clause governed the tort claims because they related to the parties' "central conflict over the interpretation" of the dealership contract. Id. at 514.

Defendants' reliance on the Manetti-Farrow case is unavailing. A comparison of the Manetti-Farrow forum selection clause with the one at issue here demonstrates why. The Manetti-Farrow clause specifically applied to disputes involving "any controversy regarding interpretation or fulfillment of the present contract," id. at 511. By contrast, the MLA's forum selection clause does not mention "interpretation" or "fulfillment" of the contract. Instead, the MLA provides that "the laws of the State of California shall govern any dispute *arising out of or under* this Agreement," which "disputes" "shall be litigated before the courts in San Francisco County or Orange County, California." MLA § 13.4 (emphasis added). In holding that the touchstone for analyzing the scope of the Manetti-Farrow clause was whether the claims related to the parties' "central conflict over the interpretation" of the contract, the Ninth Circuit necessarily focused on the precise terms of the forum selection clause before it, and held that the forum selection provision which focused on contract disputes extended to related tort claims. So this Court must do so as well.

Here, under the precise language of the forum selection clause in the MLA, "arising out of

or under" defines the scope of "disputes" subject to the forum selection clause. Thus, the relevant question for this Court to consider is whether the PTAB Petitions constitute a "dispute" that "aris[es] out of or under" the MLA. Neither party nor the Court has identified cases that construe this exact language. However, the Ninth Circuit has addressed similar "arising . . . under" provisions in arbitration agreements. Other courts have relied upon the Ninth Circuit's interpretation of arbitration clauses when interpreting similarly-worded forum selection clauses. See, e.g., Bastami v. Semiconductor Components Indus., LLC, 2017 WL 1354148, at *9-10 (N.D. Cal. Apr. 13, 2017). In Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir. 1991), for example, the court held that the phrase "any and all disputes arising under the arrangements contemplated hereunder" "must be interpreted liberally." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999) (discussing Republic of Nicaragua, 937 F.2d at 474)). Thus, the Court has considered the Ninth Circuit's interpretation of similar phrases in arbitration clauses when determining the interpretation of the forum selection clause in this case, recognizing that the Ninth Circuit's arbitration clause cases must be understood in the context of the federal policy of favoring arbitration as a method for dispute resolution. See Simula, 175 F.3d at 720. The Court concludes that the PTAB proceedings challenging the validity of the licensed patents after Plaintiff sought to enforce the license in this forum fall within the scope of the forum selection clause as they "aris[e] out of or under" the terms and performance of the contract.

Indeed, Defendants' own counterclaim demonstrates the close relationship between the PTAB Petitions and the MLA. In the counterclaim, Defendants seek a declaratory judgment that the Dodocase Patents are invalid on at least the same grounds as those included in their PTAB Petitions, and asks for an award of "all costs, expenses and attorneys' fees, including all fees, costs and expenses associated with [the PTAB Petitions], as the prevailing party *pursuant to the MLA section 13.11*." Dkt. No. 22 at 16; Dkt. No. 31 at 20 (emphasis added). Under Federal Rule of Civil Procedure 11, Defendants needed a good faith basis for this fee and expense request under the license agreement. See Fed. R. Civ. P. 11(b).

That the PTAB Petitions "aris[e] out of or under" the MLA is further substantiated by the fact that Defendant MerchSource's justification for its refusal to make royalty payments (an

alleged breach of the MLA) is that the Dodocase Patents are invalid and unenforceable. Both Plaintiff and Defendants have raised the issue of validity and enforceability with this Court through their complaint and counterclaim, and validity and enforceability are the same issues that Defendant MerchSource has placed before the PTAB. But for the parties' licensor-licensee relationship, and Defendants' interest in reducing or eliminating the royalties provided for under the MLA based on the claim of invalidity, there is no indication that Defendant MerchSource would be pursuing the PTAB proceedings at all, and, indeed, it only did so after this attempt to renegotiate the MLA based on alleged invalidity of the patents failed and Plaintiff filed this suit alleging breach of the MLA. Defendants' defense to this suit is that the patents are invalid, and they are attempting to use the PTAB proceedings to nullify Plaintiff's breach of contract or infringement claims here. The claim of invalidity is impossible to disentangle from the question of whether Defendants may be liable in this case because Defendant MerchSource breached its obligations under the terms of the agreement. For these reasons, the Court concludes that the PTAB Petitions "aris[e] out of or under" the MLA and the licensee's rights and obligations created by that agreement.

Defendants' additional argument that the MLA's forum selection clause is not applicable to the PTAB proceedings because anyone, including uninterested parties, can initiate PTAB proceedings for post-grant patent review is also unpersuasive. That others who are not subject to an exclusive forum selection clause are permitted to initiate PTAB proceedings does not resolve the question of whether Defendants are precluded from doing so based on the MLA's agreed-to forum selection clause.

Finally, Defendants argue that if the forum selection clause precludes the PTAB proceedings, it is unenforceable because of the strong public policy of permitting the United States Patent and Trademark Office to correct its mistakes. Forum selection clauses are "presumptively valid" and are fully enforced "absent some compelling and countervailing reason." Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S Bremen v. Zapata Off-

Shore Co., 407 U.S. 1, 12 (1972)).[1]  The Ninth Circuit has recognized as a potential countervailing factor whether enforcement would "contravene a strong public policy of the forum in which suit is brought," Murphy, 362 F.3d at 1140 (quoting Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (internal citations omitted)), although these cases concerned a choice between courts, not between a court and an administrative agency.

Plaintiff relies on Bremen, where the Supreme Court considered whether the forum selection clause in a contract should have been enforced.  It held that the lower courts erred in requiring the party seeking to enforce the forum selection clause to show that the venue selected in the contract was preferable to a different venue.  407 U.S. at 15.  The Supreme Court explained that "[t]he correct approach would have been to enforce the forum clause specifically unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  Id.  However, Bremen did not need to consider or resolve the question of whether a forum selection clause should be overridden based on public policy concerns, which is the relevant question here.  Similarly, Plaintiff points to Richards, which enforced a forum selection clause that specified that the securities-related disputes at issue be resolved in England under English law.  134 F.3d at 1295.  In reaching that conclusion, the court explained that the Securities Exchange Act of 1934 did not preclude forum selection clauses and rejected the "parochial" argument that all legal disputes must be resolved in United States courts under United States law.  Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974)). This case emphasizes the presumption of validity of forum selection clauses, even when they might be used to avoid the United States' securities law regime, but it does not directly bear on the precise question of whether a forum selection clause that precludes a party from initiating a PTAB challenge is enforceable in light of relevant public policy.

---

[1] Plaintiff also argues that the Ninth Circuit explained in Murphy that certain circumstances should be considered when determining enforceability of a forum selection clause in an employment contract, including power differentials, educational background, business expertise, and financial ability to bear the cost and inconvenience of the chosen forum. Murphy, 362 F.3d at 1040-41. Plaintiff goes on to argue that those factors favor enforcement of the provision here. They are of limited applicability to a forum selection clause negotiated between business entities, rather than a contract between an employer and employee.

As Defendants point out, the Federal Circuit has recognized the advantages that Congress foresaw from PTAB proceedings in upholding their constitutionality:

> Congress created the PTO, "an executive agency with specific authority and expertise" in patent law . . . and saw powerful reasons to utilize the expertise of the PTO for an important public purpose -- to correct the agency's own errors in issuing patents in the first place. Reacting to "a growing sense that questionable patents were too easily obtained and are too difficult to challenge," Congress sought to "provid[e] a more efficient system for challenging patents that should not have issued" and to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs."

MCM Portfolio LLC v. Hewlett-Packard Co., 812 F.3d 1284, 1290-91 (Fed. Cir. 2015) (internal citations omitted). In arguing that there is a strong public policy that the PTO have the opportunity to reexamine issued patents, Defendants also cite a 2006 PTO decision in which the PTO concluded that contracts that bargain away the right to PTO review of patents violate public policy. The PTO relied on Lear when it concluded that "a contractual provision preventing a party from seeking reexamination would be void as being contrary to public policy." Inter Partes Reexamination Proceeding, Decision on Patent to Vacate Order Granting Reexamination, Control No. 95/000,123, at 5 (Office of Patent Legal Admin. June 7, 2006). The PTO denied a party's request to vacate the administrative proceedings on the basis that they violated a private agreement to litigate patent disputes solely in the federal court, reasoning that the parties' agreement does not relieve the PTO of its statutory duty to conduct a reexamination after it concluded that a substantial question of patentability existed. Id.

Defendants also point to one district court case, Callaway Golf Co. v. Kappos, 802 F. Supp. 2d 678 (E.D. Va. 2011), which cited Lear for the proposition that "a private contractual agreement that would prohibit reexamination would be contrary to public policy." Id. at 686. Significantly, this is the only federal court case that Defendants cited on this point, and it made this statement in the course of ruling on the patent owner's attempt to vacate the very same PTO ruling discussed above that cited Lear. Id. at 684. The Callaway court explained that another court had previously ruled that the party who instituted the inter partes reexamination breached the contract's forum selection clause by doing so. Id. at 683 (citing Callaway Golf Co. v. Acushnet

15

1  Co., 523 F. Supp. 2d 388, 407 (D. Del. 2007) (concluding that Acushnet "violated the Agreement

2  by filing the inter partes reexaminations to contest the validity of the Sullivan patents"), rev'd in

3  part on other grounds, 576 F.3d 1331 (Fed. Cir. 2009)). Although the court accepted the PTO's

4  position that a contract that prohibited reexamination was contrary to public policy, it also ruled

5  that the party which sought the reexamination breached the forum selection clause. Id. at 686.

6  Recognizing the tension between those rulings, it explained that:

7          Although there is a strong public interest in enforcing settlement
           agreements, that is precisely what the Delaware federal district
8          Court did when it granted Callaway summary judgment on its
           breach of contract claim. Acushnet may well be liable for damages
9          for that breach. Callaway, however, *has cited no caselaw that
           requires the PTO* to independently enforce Callaway's private
10         contract. Nor has Callaway demonstrated that the public interest in
           enforcement of settlement agreements outweighs the public interest
11         in patent validity.

12 Id. at 687 (emphasis added). Essentially, the court concluded that it could not vacate the PTO's

13 ruling because the PTO had no duty to walk away from an already instituted reexamination in

14 light of its statutory obligations. That is in sharp contrast with the procedural posture of the

15 proceedings before the PTAB in this case, which has not yet determined if it will even review the

16 Dodocase Patents. It also does not indicate that this Court should refuse to enforce the forum

17 selection clause here *before* the PTAB has decided whether to review the patents, in light of a

18 valid forum selection clause that provides for litigating validity here, and the public policy

19 generally favoring enforcement of such clauses.

20      It is worth noting that both of these opinions involved a situation where the reexamination

21 of the patent was challenged based on a settlement agreement, as Defendants have sought to

22 distinguish cases that enforce settlement agreements' forum selection clauses to the exclusion of

23 patent-related challenges in other fora. Defendants argue that those cases are materially different

24 because they implicate the strong public policy favoring the enforcement of settlement

25 agreements. They cite Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362 (Fed. Cir. 2001), which held

26 that a no-challenge clause in a settlement agreement is enforceable because, unlike in Lear, the

27 important public policy interest in enforcing settlement terms is involved. Defendants' reliance on

28 Flex-Foot, however, reveals the inconsistency of their argument. If the Federal Circuit concluded

16

that the public policy interest in enforcing the terms of a bargained-for settlement agreement was enough to override the concerns expressed in Lear, it is not clear why the public policy interest in enforcing a bargained-for "presumptively valid" forum selection clause should not also prevail over the public policy interest in permitting PTAB review of previously issued patents. As the court recognized in the Delaware proceedings in Callaway when it enforced the forum selection clause, the public interest is not compromised because other third parties may still challenge the validity of the Dodocase Patents through the PTAB, even if Defendants have bargained away their opportunity to do so. See Callaway, 523 F. Supp. 2d at 407.

The Court is not persuaded that the other reasons raised by Defendants suffice to overcome the policy favoring enforcement of the parties' agreed-upon selection of forum. Ironically, Defendants argue that by being forced to litigate here in district court rather than before the agency, they will be denied their "day in court." Opp. at 8. They argue that the PTAB panels are superior because they are staffed by technically-trained subject matter experts, and use a less stringent standard for finding invalidity (district courts use a "clear and convincing evidence" standard for claim construction, compared to the "by a preponderance of the evidence" standard and the "broadest reasonable interpretation" of claims standard that is used to address invalidity in PTAB proceedings). See, e.g., PersonalWeb Techs., LLC v. Facebook, Inc., 2014 WL 116340, at *1 (N.D. Cal. Jan. 13, 2014) (discussing PTAB experts); Cuozzo Speed Techs., LLC v. Lee, __ U.S. __, 136 S. Ct. 2131, 2142, 2144 (comparing burdens of proof and claim construction standards)). Defendants essentially ask this Court to permit their belated attempt at forum shopping. District courts are authorized to decide patent validity challenges and Defendants' preference for one forum over the other does not justify the PTAB Petitions if they are not, in fact, permitted under the MLA and that provision of the MLA is lawful. When Congress instituted PTAB proceedings for inter partes review, it preserved the ability to bring parallel proceedings and did not require district courts to stay their cases but left it to their sound discretion, implicitly recognizing that both are adequate fora to adjudicate claims of patent invalidity. The loss of the ability to bring a case in a different forum where the party is advantaged by its procedural rules is not, on its own, a sufficiently compelling reason to disregard the parties' agreed-upon choice of

forum. That is especially true where Defendant MerchSource was aware of the availability of PTAB proceedings when it entered into the MLA. Finding no countervailing reason that is sufficient to preclude enforcement of the forum selection clause and finding that its scope includes the PTAB proceedings, the Court concludes that Plaintiff has demonstrated a likelihood of success on its breach of contract claim.

### B.     Irreparable Harm

Plaintiff argues that it will be irreparably harmed if an injunction does not issue because it will be forced to litigate these issues on multiple fronts with the possibility of inconsistent results and will be deprived of its bargained-for forum, relying on Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., Inc., 651 F.3d 1355 (Fed. Cir. 2011). There, Leviton Manufacturing Co. ("Leviton") and General Protecht Group ("GPG"), as well as three other entities, entered into a settlement agreement to resolve claims of patent infringement that Leviton had previously brought against GPG and the other entities in federal district court. Id. at 1357. The settlement agreement included a provision that any disputes that arose between the parties under the settlement agreement were to be exclusively litigated in the United States District Court for the District of New Mexico. Id. at 1358. After entering into the settlement agreement, Leviton filed a complaint with the International Trade Commission ("ITC") alleging that GPG was infringing patents that were continuations of the patents that were subject to the settlement agreement. Id. Leviton also filed a complaint in the Northern District of California alleging infringement of the same two patents. Id. GPG then filed a complaint in the District of New Mexico asserting declaratory judgment claims for breach of contract, non-infringement, and invalidity. Id. GPG also moved for a temporary restraining order and a preliminary injunction against Leviton's continued litigation of the dispute outside of that forum. Id. The district court issued the preliminary injunction enforcing the forum selection clause. Id. On the issue of irreparable harm, the district court found that "litigating simultaneously in California and the ITC will cause financial and business hardship . . . [and that] the inconvenience and disruption to its business is irreparable." Id. at 1363. The Federal Circuit upheld the district court's ruling that GPG established irreparable harm on that basis. Id. at 1364.

The same concerns that amounted to irreparable harm in <u>Gen. Protecht Grp.</u> are also present here.  Plaintiff has filed a declaration by its chairman and co-founder about the disruption of the business and the financial hardship it will face if the PTAB proceedings continue.  Principally, he states that Dodocase only has four employees and limited resources.  <u>See</u> Buckley Decl., ¶¶ 1-7.  Plaintiff has also been put to the added expense of hiring specialized attorneys to respond to the PTAB Petitions.  <u>Id.</u>  Moreover, he explains that the PTAB proceedings will materially disrupt Dodocase's business because it will prevent it from effectively enforcing its patent rights, which will diminish its market position.  <u>Id.</u>  As the district court recognized in <u>Gen. Protecht Grp.</u> and the Federal Circuit agreed, these hardships are manifest in the need to defend a challenged patent on multiple fronts at the same time.  <u>See</u> <u>Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.</u>, 2010 WL 5559750, at *25-26 (D.N.M. Nov. 30, 2010); <u>Gen. Protecht Grp.</u>, 651 F.3d at 1363-64.  Although <u>Gen. Protecht Grp.</u> involved a parallel ITC proceeding, current PTAB proceedings are much closer to the rigor of ITC proceedings than the previous versions of inter partes review.  A slightly reduced degree of harm, if any, that arises from this distinction does not cure the fundamental irreparable harm caused by requiring Plaintiff to simultaneously litigate on two fronts with different attorneys and under different rules instead of preventing Plaintiff from obtaining the benefit of its contracted-for exclusive dispute resolution process.

Finally, Defendants' contention that Plaintiff's claim of irreparable harm is undermined by the fact that it waited over a month between learning of the PTAB Petitions and filing this motion for injunctive relief is not well taken.  Because Plaintiff filed its motion before it incurred any substantial expenses in the PTAB Petitions or delay caused by those proceedings, the four weeks that passed between learning of the PTAB proceedings and filing this motion are immaterial.  Moreover, Plaintiff has persuasively explained that Defendants' timing argument is misplaced because it ignores the MLA's requirement for required notice of breach and a 30-day cure period.  Plaintiff states that it gave prompt notice to Defendants of the breach of the forum selection clause, and that the 30-day cure period only expired on February 13, 2018.  Plaintiff's motion for injunctive relief was then filed three days later on February 16, 2018, after it had provided a copy of the draft TRO motion to Defendants to give them an opportunity to voluntarily withdraw the

PTAB Petitions. Thus, the brief delay in filing this motion was not only immaterial but justified.

## C.  Balance of Equities

A party seeking injunctive relief must demonstrate that the balance of equities tips in its favor. Plaintiff argues that it will suffer the hardship of litigating on two fronts, resulting in added expense, delay, and the potential for inconsistent results, whereas Defendants have engaged in questionable behavior for months and can pursue their invalidity arguments in this Court.

The Court declines to accept Plaintiff's invitation to find that Defendants have engaged in any underhanded conduct leading up to the filing of the PTAB Petitions. Plaintiff's theory seems to rest almost entirely on the fact that Defendants requested a relatively short extension to respond to the complaint due to the unavailability of counsel and relevant personnel who work for Defendants at the end of the year and in light of the holidays, an extension which Plaintiff contends was actually used to draft the PTAB Petitions. Extensions to respond to a complaint are not rare, and the Court is unconvinced that the extension was sought for unfair reasons.

For their part, Defendants contend that granting the requested injunctive relief will result in their inability to ever pursue PTAB review of the Dodocase Petitions. See 35 U.S.C. § 315(b) (a patent review petition must be filed within one year of service of a complaint alleging patent infringement). Relatedly, they argue again that an injunction will deprive them of the unique aspects of PTAB review, discussed in more detail above. However, Defendants "should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship." Gen. Protecht Grp., 651 F.3d at 1365. Accordingly, the balance of hardships tips in favor of granting the injunction.

## D.  Public Interest

The final factor in the analysis is whether an injunction is in the public interest. Plaintiff argues that an injunction would serve the public interest because it vindicates the parties' contractual rights and obligations. As the Federal Circuit observed in Gen. Protecht Grp., 651 F.3d at 1366: "There is no public interest served by excusing a party's violation of its previously negotiated contractual undertaking to litigate in a particular forum." This Court is an adequate forum for Defendants to challenge the validity of the Dodocase Patents, and granting the

injunction protects the right of parties to freely contract for a chosen forum and the ability of courts to enforce such agreements. Further, nothing prevents an independent third party from initiating separate PTAB proceedings. For these reasons, the public interest supports entering a preliminary injunction.

## IV.    FORM OF PRELIMINARY INJUNCTION ORDER

After the Court expressed its intention to grant the motion following oral argument on Plaintiff's motion, it ordered the parties to meet and confer on the form that the preliminary injunction order should take, considering the particular procedural requirements of the PTAB. To that end, the Court ordered the parties to file a joint proposed order or, if they could not agree, file separate orders containing proposed details on the order's form. They could not agree, and each side filed its own proposed order on March 16, 2018. Dkt. Nos. 42 & 43.[2] They were able to agree on the injunction's general outline, but reached an impasse on several issues, which the Court addresses in turn.

### A.    Security

Defendants have asked the Court to order Plaintiff to provide security for the issuance of the preliminary injunction pursuant to Rule 65(c). They ask that Plaintiffs give a bond or make a deposit with the Court in the amount of $120,000.

Rule 65(c) provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c). The Northern District of California's local rules also address the issue of security when an injunction issues. Local Rule 65.1-1(1), entitled "When Required," provides that "[u]pon demand of any party, where authorized by law and for good cause shown, the Court may require any party to furnish security for costs which can be awarded against such party in an

---

[2] Defendant MerchSource filed the proposed order in its name only, as the PTAB Petitions were filed in its name alone.

amount and on such terms as the Court deems appropriate." The district court has discretion to decide if it will require security when it issues an injunction. See Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011) (noting that "[t]he district court retains discretion as to the amount of security required, *if any*," and holding that the district court did not abuse its discretion when it did not require the plaintiffs to post a bond when it granted a preliminary injunction) (emphasis in original) (internal quotations and citation omitted).

The Court declines to exercise its discretion to require a bond or other security at this time, without prejudice to Defendants' ability to make the request on a regular motion with full briefing. Defendants did not raise the issue in their opposition to this motion, instead only making an oral request for a bond at the March 13, 2018 case management conference. Further, in their most recent filings of March 16, 2018, the parties did not fully brief the issue. Moreover, Defendants merely assert that $120,000 is the appropriate amount for a bond with a mere reference to the PTAB fee schedule and a vague mention of "other costs." Even if that is the correct amount, there is the possibility as acknowledged by the parties that the PTAB will refund at least part of the filing fee upon the withdrawal of the petitions. Defendants also hope to receive a stay from the Federal Circuit, while Plaintiff may seek a supersedeas bond pending any appeal of this order. Thus, it is impossible to tell at this juncture whether the circumstances warrant the imposition of any amount, much less whether $120,000 is the appropriate amount, or indeed whether Defendants may be required to post a supersedeas bond if they follow through on their intent to file an immediate appeal and request for stay. Should Defendants choose to further pursue their request for a bond or other security, they must file an appropriate motion with the Court.

**B.       Timing of the PTAB Motions to Dismiss**

At the case management conference on March 13, 2018, Defendants also made an oral motion to stay the Court's preliminary injunction order pending Defendants' appeal to the Federal Circuit. The Court denied the oral motion.

The parties have represented to the Court that there are a number of steps that must be taken before Defendant MerchSource can withdraw the PTAB Petitions. According to the parties, first Defendant MerchSource will need to request a conference call with the PTAB to seek

permission to file a motion to dismiss each of the PTAB Petitions. Second, Defendant MerchSource will need to file formal motions to dismiss with the PTAB. In light of the various steps that are necessary to affect the withdrawal of the PTAB Petitions and start the appeal process, the preliminary injunction cannot be implemented immediately.

Accordingly, the Court orders Defendants, and in particular MerchSource as the filing entity and real-party-in-interest ThreeSixty as necessary, to observe the following timeline in carrying out the obligations under the preliminary injunction: (1) send the email to the PTAB by Sunday March 25, 2018 requesting a conference call to facilitate the withdrawal of the PTAB Petitions, and (2) if the PTAB grants permission to file motions to dismiss the petitions, file the motions by 12:00 p.m. on April 3, 2018.

### C. Proposed Communication with the PTAB and Motions to Dismiss the PTAB Petitions

As noted above, the parties have informed the Court that withdrawing the PTAB Petitions is a two-step process. In conjunction with their competing proposed orders, the parties filed different versions of a draft email requesting the conference call and draft motions to dismiss.

To the extent that the proposed documents overlap and the parties have agreed on particular language, they are directed to use those portions of the agreed upon email and motions to dismiss. The disputed portions primarily refer to Defendant MerchSource's opposition to the preliminary injunction order, intent to appeal, and statements that they will be submitting these documents to the PTAB involuntarily. The Court does not adopt any particular language that must be used, but orders the parties to meet and confer and to adhere to the following requirements in composing the final versions of the documents that are submitted to the PTAB.

The final versions should not attempt to undermine or mischaracterize the Court's preliminary injunction order. For example, the documents should not represent that the Court issued a "partial stay" of the preliminary injunction. The order speaks for itself, and sets a schedule for implementing the injunction but does not stay relief. While the Court agrees with Defendants that it is appropriate to note that the Court granted the preliminary injunction over Defendants' opposition, that Defendants intend to appeal the order, and that they are submitting

the email and filing the motions to dismiss only so that they are in compliance with the Court's order, those statements are sufficient to convey the compulsory nature of the submissions. Defendants do not even purport to explain why it would be necessary to have the additional language that Plaintiff objects to. For example, any reference to documents being submitted "under protest" is superfluous and would appear to be designed to encourage the PTAB not to dismiss the petitions, undermining the Court's order.

## V.    CONCLUSION

Having examined each of the four <u>Winter</u> factors, the Court GRANTS Plaintiff's motion for a preliminary junction. Defendants, and in particular MerchSource as the filing entity and real-party-in-interest ThreeSixty as necessary, are ORDERED to (1) send the email to the PTAB by Sunday March 25, 2018 requesting a conference call to facilitate the withdrawal of the PTAB Petitions, and (2) if the PTAB grants permission to file motions to dismiss the petitions, then file the motions by 12:00 p.m. on April 3, 2018. The content of the email and motions to dismiss must comply with the requirements set forth above. Plaintiff need not post a bond at this time.

**IT IS SO ORDERED.**

Dated: March 23, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California