UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DODOCASE VR, INC., <br> Plaintiff, <br> v. <br> MERCHSOURCE, LLC, et al., <br> Defendants. | Case No.17-cv-07088-EDL <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT** <br><br> Re: Dkt. Nos. 71, 73, 76 |

Before the Court is Plaintiff Dodocase VR, Inc.'s motion to enforce a settlement agreement with Defendants MerchSource LLC and Threesixty Brands Group LLC (together, "Defendants").[1] The parties briefed the motion on shortened time pursuant to stipulation, and both sides agreed that the evidentiary record submitted on the motion was complete and a hearing was not necessary. Having carefully considered the parties' briefs and the evidence discussed therein, the Court determined that it was appropriate to decide the motion on the papers. For the following reasons, the Court DENIES the motion and orders the parties to MEET AND CONFER on discovery and the case management schedule.

---

[1] Both parties filed motions to seal certain portions of the exhibits filed with their briefs. Dkt. Nos. 71 & 76. Plaintiff designated this material pursuant to Section 5 of the protective order entered in this case as containing confidential settlement information in the form of sensitive pricing information that could be used to Plaintiff's disadvantage by existing or potential licensees. Defendants designated similar information in their exhibits in response to Plaintiff's motion to seal. Courts apply the good cause standard to requests to seal information filed in conjunction with a motion to enforce a settlement agreement and permit the sealing of confidential business information. See NetApp, Inc. v. Nimble Storage, Inc., 2015 WL 5569420 (N.D. Cal. Sept. 22, 2015). The parties' sealing requests are appropriate to protect the license pricing information contained in the materials and therefore the motions to seal are GRANTED. However, as Plaintiff pointed out on reply, Defendants inadvertently included an unredacted monetary term in their opposition. The Clerk has already temporarily sealed docket number 77. Defendants are ordered to re-file the document with the monetary term redacted.

## I. BACKGROUND

The parties and this Court are well acquainted with the factual allegations in this case, so a full recitation of those facts is not necessary to resolve this motion. However, a brief procedural history is relevant, and the facts set forth below are drawn from the exhibits filed by the parties on this motion.

On March 23, 2018, the Court entered a preliminary injunction, which was amended on March 26, 2018, that required Defendants to withdraw three petitions that Defendant MerchSource had previously filed with the Patent Trial and Appeal Board (the "PTAB"). On March 25, 2018, Defendant MerchSource appealed the preliminary injunction order to the Federal Circuit, and it also filed a motion for a stay of the injunction pending appeal. On April 25, 2018, the Federal Circuit granted the motion to stay pending appeal. As a result of the stay, the parties are now litigating in three venues -- this Court, the Federal Circuit, and the PTAB.

Before the Federal Circuit stayed the preliminary injunction, the parties were engaged in negotiating a settlement of this case. Prior to March 28, 2018, there was some talk of potential settlement between the parties. Negotiations did not gain any meaningful traction, however, until Defendants[2] sent Plaintiff a long email on March 28, 2018, offering detailed "non-monetary terms" and responding to Plaintiff's previous monetary offer with a counteroffer on a per-unit royalty rate and the treatment of Q4 2017 sales. Haller Decl., ¶ 6, Ex. C (03/28/18 email at 9:52 p.m.).[3] The non-monetary terms were the following, as stated in the email:

> (1) The license would apply to ALL VR headsets sold by MerchSource, so long as the headset includes an internal mechanism for contacting the screen to induce a touch event, regardless of whether the VR headset is, in fact, covered by one or more claims of the patents. In other words, viewers that have a built-in button to interact with the phone.
>
> (2) MerchSource would withdraw its motion to stay the injunction, and withdraw its PTAB petitions.

---

[2] MerchSource is the real party in interest in this case as the only Defendant that originally signed the MLA, and therefore the email correspondence referenced herein was made in the name of MerchSource only.

[3] For ease of referencing the documents contained in the exhibits to the motion, the Court cites the time printed on the emails without respect to time zone.

2

> (3) MerchSource would agree not to challenge the validity of the patents (and such clause would be enforceable), and not to assist others in challenging the patents.
>
> (4) The license would NOT need to include a most favored nations royalty clause.
>
> (5) The license term would extend for the life of the patents, assuming they remain valid.
>
> (6) Arbitration provisions would be unnecessary due to the new definition of licensed products.

Id. Defendants stated that they "believe[ ] these terms to all be advantageous to DODOCASE and an improvement to DODOCASE over the legacy agreement." Id. They went on to ask Plaintiff "to appreciate that the non-monetary proposal now offered by MerchSource provides DODOCASE with significantly more rights than it ever had under the prior agreement, and certainly more rights than it now has following termination of the agreement." Id.

Plaintiff responded the next day with a counteroffer. Haller Decl., ¶ 6, Ex. C (03/29/19 email at 6:12 p.m.). Plaintiff's response addressed the monetary terms of Defendants' March 28 offer only, proposing a new per-unit royalty rate and treatment of the Q4 2017 sales but also proposing a minimum annual royalty payment as a "reasonable assurance" that Defendants would stay in the market. Id. Defendants responded less than three hours later with a counteroffer on the proposed per-unit royalty, noting that "[a]ll other terms proposed yesterday by MerchSource would remain the same." Haller Decl., ¶ 6, Ex. C. (03/29/18 email at 8:48 p.m.). Plaintiffs responded yet again that night, counteroffering with the "[s]ame general terms as discussed in earlier proposals with . . . modification" to the per-unit royalty rate, the treatment of Q4 2017 sales, and the minimum annual royalty payment. Haller Decl., ¶ 6, Ex. C (03/29/18 email at 10:15 p.m.).

On March 30, Defendants responded to Plaintiff's most recent counteroffer, stating that they were "not in a position to further increase its proposed settlement offer (or modify its proposed settlement structure) at this time." Haller Decl., ¶ 6, Ex. C (03/30/18 email at 12:38 p.m.). Defendants further stated that even though MerchSource rejected Plaintiff's offer, their "prior proposal remains on the table and MerchSource is willing to consider future offers from DODOCASE." Id. Several days later, on April 4, 2018, Defendants re-opened negotiations and

3

wrote to Plaintiff that they were revising upwards the per-unit royalty rate from their March 29 offer. Haller Decl., ¶ 6, Ex. C (04/04/18 email at 4:16 p.m.). They stated that "all other terms of MerchSource's March 29 offer remain[ ] the same." Id. Defendants acknowledge in their opposition that this reference to "all other terms" includes the non-monetary terms set forth in the March 28, 2018 offer. According to Defendants' opposition and not disputed by Plaintiff, Plaintiff rejected this offer on April 4 at 4:49 p.m., although neither side provided a copy of the email.

On April 10, 2018, Plaintiff expressed an interest in reopening settlement discussions. Haller Decl., ¶ 7, Ex. D (04/10/18 email at 1:29 p.m.). Defendants responded that they were receptive to continued settlement negotiations. Haller Decl., ¶ 7, Ex. D (04/11/18 email at 11:39 a.m.). On April 12, Plaintiff made an offer on the "[s]ame general terms as discussed in earlier proposals with the following modifications" of the per-unit royalty rate, Q4 2017 sales treatment, and minimum royalty payment. Haller Decl., ¶ 7, Ex. D (04/12/18 email at 2:07 p.m.). Apparently after a phone conversation between counsel that had taken place on April 12, Plaintiff provided another counteroffer on the same three monetary terms. Haller Decl., ¶ 7, Ex. D (04/12/18 email at 9:39 p.m.). The parties continued to exchange emails over the next several days, both sides indicating that they could not accept the other side's monetary terms at that time. Haller Decl., ¶ 7, Ex. D (04/13/18-04/16/18 emails). Defendants assert that this period of negotiations fundamentally changed their view about whether the non-monetary terms should be included in any settlement agreement in light of Plaintiff's new demand that minimum royalties be included as a term. Johnson Decl., ¶ 8.

On April 17, 2018, Defendants extended three proposals of monetary terms only (per-unit royalty rate, Q4 2017 sales treatment, and minimum royalty payment), with the different proposals tethered to various ways the Federal Circuit might rule on MerchSource's motion to stay the preliminary injunction pending appeal. Haller Decl., ¶ 8, Ex. E (04/17/18 email at 12:00 p.m.). Unlike their prior emails of March 28, March 29, and April 4, Defendants' April 17 offer did not reference the non-monetary terms or any terms from prior offers. In response, Plaintiff gave its "best and final" counteroffer with new monetary terms on the "same non monetary terms offered." Haller Decl., ¶ 8, Ex. E (04/18/18 email at 3:51 p.m.). Defendants rejected this offer, and

4

countered with an offer that contained monetary terms only for treatment of Q4 2017 sales and a per-unit royalty rate. Johnson Decl., ¶ 9, Ex. 2 (04/18/18 email at 5:53 p.m.).

In response, Plaintiff offered two new alternative sets of monetary terms (each with different amounts for treatment of the Q4 2017 sales and the per-unit royalty rate), without referring to non-monetary terms. Haller Decl., ¶ 4, Ex. A (04/18/18 email at 11:00 p.m., followed by an email several minutes later from Plaintiff correcting a typographical error). The next day Defendants wrote that "MerchSource accepts Dodocase's offer to settle the dispute" based on one of the alternative "monetary terms" Plaintiff had offered the prior evening. Haller Decl., ¶ 4, Ex. A (04/19/18 email at 3:04 p.m.). In their opposition, Defendants explain that they removed Plaintiff's rejected offer referring to the non-monetary terms from the parties' email string when they accepted Plaintiff's offer to avoid the appearance that their acceptance incorporated the non-monetary terms referenced in Plaintiff's April 18 email at 3:51 p.m. Johnson Decl., ¶ 11.

When they accepted Plaintiff's monetary terms, Defendants stated that they would send a "settlement agreement by tomorrow so that [the parties] can get it formalized." Haller Decl., ¶ 4, Ex. A (04/19/18 email at 3:04 p.m.). Plaintiff offered to supply the first draft, but Defendants declined and reiterated that they would prepare the first draft. Haller Decl., ¶ 4, Ex. A (04/19/18 emails at 5:22 p.m. and 5:24 p.m.). Still, Plaintiff circulated a draft settlement agreement on April 19, 2018. Haller Decl., ¶ 9, Ex. F; Johnson Decl., ¶ 11. Defendants then sent their own draft settlement agreement to Plaintiff on April 20, 2018. Johnson Decl., ¶¶ 12-13, Ex. 3 (04/20/18 email at 5:37 p.m.). Compared to Plaintiff's draft of the settlement agreement, Defendants' draft included different non-monetary terms, including terms that varied from the non-monetary terms included in its March 28, 2018 offer. Id., Ex. 3. For example, the April 20 draft did not include a term that the license extended for the life of the patents, that MerchSource would not challenge the validity of the patents, or that the license would not need to include a "most favored nations" royalty clause. Id.; Haller Decl., ¶¶ 9-10, Ex. F-G.[4] Plaintiff circulated a revised version of

---

[4] The absence of the disputed non-monetary terms in Defendant's draft is confirmed by the comments that Plaintiff added to the draft and provided to the Court as Exhibit H to its motion, where Plaintiff made edits or added provisions based on its view that the non-monetary terms from Defendants' March 28 email were included in the settlement agreement. Haller Decl., ¶ 11, Ex. H.

5

Defendants' draft on April 23, 2018 at 4:20 p.m. Johnson Decl., ¶ 13, Ex. 3. Defendants did not respond to Plaintiff's revised version and, after that date, MerchSource explained its position that it had not agreed to the non-monetary terms and other revisions. Haller Decl., ¶ 4, Ex A. Plaintiff subsequently filed this motion to enforce a settlement agreement on April 30, 2018.

## II. LEGAL STANDARD

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it. However, the district court may enforce only *complete* settlement agreements." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original) (citations omitted). Because a settlement agreement is treated "as any other contract for purposes of interpretation[,] . . . [t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992). "A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain." Lindsay v. Lewandowski, 139 Cal. App. 4th 1618, 1622 (Cal. Ct. App. 2006).

"When parties intend that an agreement be binding, the fact that a more formal agreement must be prepared and executed does not alter the validity of the agreement." Blix St. Records, Inc. v. Cassidy, 191 Cal. App. 4th 39, 48 (Cal. Ct. App. 2010). "[T]he precise terms and specific language of [an agreement] are not necessarily material . . . courts routinely enforce settlement agreements even where the precise wording of [an agreement] has not been finalized." Fabric Selection, Inc. v. Zulily LLC, 2018 WL 1773111, at *4 (C.D. Cal. Apr. 9, 2018) (quoting Trustees of the Operating Eng'rs Pension Tr. v. Smith-Emery Co., 2017 WL 275599, at *9 (C.D. Cal. Jan. 19, 2017)) (citations omitted).

"Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Callie, 829 F.2d at 890 (emphasis in original) (citations omitted).

## III. DISCUSSION

The parties dispute whether a valid and binding settlement agreement was formed.

6

Plaintiff contends that one was formed, as the parties had agreed on all material monetary and non-monetary terms. Plaintiff maintains that on April 19 Defendants accepted the monetary terms Plaintiff offered on April 18, and that Defendants never withdrew the non-monetary terms they offered on March 28 or rejected them when Plaintiff expressly incorporated the non-monetary terms in its April 18 offer. Defendants argue that they rejected Plaintiff's April 18 offer that referred to the non-monetary terms when they countered with an offer on the monetary terms only.

### A. No Meeting of the Minds on All Material Terms

The key dispute is whether the parties had a meeting of the minds about the inclusion of the non-monetary terms that were originally set forth in Defendants' March 28, 2018 offer. Defendants contend that Plaintiff did not accept and in fact rejected the non-monetary terms each time it made a counteroffer to Defendants' offers that included the non-monetary terms. Defendants argue that they stopped offering the non-monetary terms after Plaintiff introduced the concept of a settlement agreement that included a minimum annual royalty payment on April 12, 2018 because they considered a minimum annual royalty payment to have fundamentally altered the dynamics of settlement negotiations. Plaintiff responds that Defendants never withdrew the non-monetary terms from the negotiations, which means that they were incorporated in Defendants' April 19 acceptance, and that Defendants' secret subjective intent no longer to include the non-monetary terms in the settlement is irrelevant to whether the non-monetary terms were actually incorporated in Defendants' acceptance on April 19, 2018.

Neither party's subjective intent is dispositive of this issue. "Under California law, the intent of the parties determines the meaning of the contract. The relevant intent is 'objective' -- that is, the intent manifested in the agreement and by surrounding conduct -- rather than the subjective beliefs of the parties. For this reason, the true intent of a party is irrelevant if it is unexpressed." United Commercial Ins. Serv., Inc., 962 F.2d at 856. "The test is whether a reasonable person would, from the conduct of the parties, conclude that there was a mutual agreement." Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1050 (Cal. Ct. App. 2001).

The Court's detailed review of the email correspondence submitted on this motion

establishes that there was not an objective meeting of the minds to include the non-monetary terms in the settlement agreement. Significantly, "terms proposed in an offer must be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract." Panagotacos v. Bank of America, 60 Cal. App. 4th 851, 855-56 (Cal. Ct. App. 1998). At the beginning of the parties' negotiations, Defendants expressly stated several times that it was making offers and counteroffers that included the non-monetary terms set forth in the March 28 email. See Haller Decl., ¶ 6, Ex. C. (03/29/18 email at 8:48 p.m.); Haller Decl., ¶ 6, Ex. C (03/30/18 email at 12:38 p.m.); Haller Decl., ¶ 6, Ex. C (04/04/18 email at 4:16 p.m.). On April 12, Plaintiff made an offer on the "[s]ame general terms as discussed in earlier proposals" with new monetary terms. Haller Decl., ¶ 7, Ex. D (04/12/18 email at 2:07 p.m.; see also 04/12/18 email at 9:39 p.m. and 04/13/18 email at 7:01 a.m.). Then, by contrast to Defendants' prior offer, Defendants' counteroffer on April 13, 2018 rejected Plaintiff's offer and countered with monetary terms only. Haller Decl., ¶ 7, Ex. D. (04/13/18 email at 12:11 p.m.). At each point where Plaintiff offered non-monetary terms but Defendants' counteroffer did not contain the non-monetary terms, the non-monetary terms fell away and became null and void as not met "exactly, precisely and unequivocally."

Thus, Plaintiff's argument that Defendants never withdrew the non-monetary terms and therefore they were implicit Defendants' April 19 acceptance is unavailing. Therefore, to determine whether there was a meeting of the minds on the non-monetary terms, the Court must closely review the offers and counteroffers that were exchanged immediately before Defendants accepted Plaintiff's offer on April 19 because, if the non-monetary terms were included in a settlement agreement, they must have been offered and accepted at this point.

The relevant exchange is as follows. On April 18, Plaintiff offered its "best and final" monetary terms, expressly stating that the non-monetary terms were incorporated in the offer. Haller Decl., ¶ 8, Ex. E (04/18/18 email at 3:51 p.m.) ("same non monetary terms offered as well as [ ] for Q4; and as to royalty starting Jan 1, 2018 . . ."). Defendants rejected Plaintiff's offer, and countered with proposed monetary terms only. Johnson Decl., ¶ 9, Ex. 2 (04/18/18 email at 5:53 p.m.). Plaintiff followed up several hours later with two alternative proposals for the

8

1  monetary terms, one where the per-unit royalty rate varied based on whether the Federal Circuit
2  entered a stay of the preliminary injunction, but Plaintiff's counteroffer did not expressly
3  incorporate the non-monetary terms. Haller Decl., ¶ 8, Ex. E (04/18/18 email at 11:00 p.m.,
4  followed by an email several minutes later from Plaintiff correcting a typographical error). The
5  next day, Defendants responded by email that "MerchSource accepts Dodocase's offer to settle the
6  dispute based on the following monetary terms," choosing one of Plaintiff's proposals. Haller
7  Decl., ¶4, Ex. A (04/19/18 email at 3:04 p.m.).

In light of the requirement that an offer's terms must "be met exactly, precisely and unequivocally for its acceptance to result in the formation of a binding contract," Panagotacos, 60 Cal. App. 4th at 855-56, Defendants' rejection of Plaintiff's April 18 offer that included the non-monetary terms in their April 18 email at 5:53 p.m., followed by their counteroffer that consisted of monetary terms only, establishes the lack of sufficient agreement. At that point, Plaintiff's April 18 offer, including the reference to the non-monetary terms, terminated. Moreover, Plaintiff's subsequent April 18 rejection and counteroffer that included two alternative proposals for the monetary terms did not reference non-monetary terms and, thus, Plaintiff did not re-offer them at any point before Defendants accepted Plaintiff's monetary terms on April 19. Haller Decl., ¶ 4, Ex. A (04/18/18 email at 11:00 p.m.). A reasonable person would not conclude that Defendants were agreeing to the non-monetary terms that they had already rejected earlier that day at 5:53 p.m.

Other manifestations made during the course of negotiations and after the April 19 acceptance reinforce this conclusion. See Inamed Corp. v. Kuzmak, 275 F. Supp. 2d 1100, 1127 (C.D. Cal. 2002) (considering events after the execution of a purported agreement when evaluating whether there was an enforceable agreement). First, at the beginning of the parties' negotiations, Defendants expressly stated several times that it was making offers and counteroffers that included the non-monetary terms set forth on March 28, as discussed above. See Haller Decl., ¶ 6, Ex. C. (03/29/18 email at 8:48 p.m.); Haller Decl., ¶ 6, Ex. C (03/30/18 email at 12:38 p.m.); Haller Decl., ¶ 6, Ex. C (04/04/18 email at 4:16 p.m.). However, they stopped including those non-monetary terms after April 4. While it is apparent that Defendants' settlement negotiation strategy

shifted away from the non-monetary terms at this point, the shift did not occur as Defendants argue because Plaintiff introduced a new monetary term for minimum royalties. The email correspondence demonstrates that Plaintiff first introduced the idea of royalty minimums on March 29 (Haller Decl., ¶ 6, Ex. C (03/29/18 email at 6:12 p.m.)), and for a while after Plaintiff first proposed royalty minimums, Defendants reiterated that their offer included the non-monetary terms. Haller Decl., ¶ 6, Ex. C (03/29/18 email at 8:48 p.m.) (Defendants stated in their counteroffer that "[a]ll other terms proposed yesterday by MerchSource would remain the same"). Nonetheless, Defendants' obvious pivot to offering solely monetary terms lends further support to the conclusion that the parties never came to a meeting of the minds on the inclusion of the non-monetary terms.

Second, each party provided a first draft of the written settlement agreement (Plaintiff on April 19 and Defendants on April 20), but Defendants' April 20 draft did not include the disputed non-monetary terms. Haller Decl., ¶¶ 9-10, Exs. F & G. On April 23, Plaintiff provided a mark-up of Defendants' version that made various modifications, including the addition of the non-monetary terms. Johnson Decl., ¶ 13, Ex. 3. Defendants never responded to Plaintiff's mark-up. Id., ¶ 13. The absence of the non-monetary terms in Defendants' draft is yet another objective indication that they did not consider the non-monetary terms to be part of the settlement.

Plaintiff argues that Defendants intentionally excluded the non-monetary terms in their version so that they would force Plaintiff to make substantial modifications to the draft. Plaintiff contends that the intention was to provide a copy of the draft to the Court with as much "red" as possible to support Defendants' position that there was no meeting of the minds. However, Plaintiff's argument is based on the premise that Defendants have invented this dispute over whether the non-monetary terms were part of the April 19 settlement because they believe they now have a strategic advantage over Plaintiff in light of the Federal Circuit's recent decision to stay the preliminary injunction order. This argument is flawed given that Defendants provided their draft of the settlement agreement on April 20 and the Federal Circuit did not rule on the stay until April 25. At the time that Defendants provided their draft, they did not know with certainty how the Federal Circuit would rule on the motion for a stay, and Defendants were in no better

10

position on April 20 than they were weeks earlier when Defendants still expressly left the non-monetary terms on the negotiating table. These competing draft settlement agreements support the conclusion that each side had diametrically opposed views about whether the non-monetary terms had been agreed to on April 19. Moreover, it is notable that neither side objected to the presence or absence of the non-monetary terms in the other side's draft when Plaintiff provided its draft on April 19 and Defendants provided their draft on April 20. A reasonable person would expect that that would have raised a red flag for one side or the other if there truly had been a meeting of the minds on the issue.[5] Johnson Decl., ¶ 13, Ex. 3.

Plaintiff contends that the reasons Defendants offered the non-monetary terms in the first place did not change during the time between the March 28 offer of the non-monetary terms and the April 19 acceptance. As evidence of the reasons why Defendants offered the non-monetary terms to begin with, Plaintiff points to statements Defendants made in their March 28 email: (1) because of the "small window of opportunity before the Federal Circuit rules on MerchSource's motion;" (2) "to find a solution that provides long-term peace between the parties" by "eliminating not just this dispute but all potential future disputes;" and (3) to induce Plaintiff to lower its demand. Haller Decl., ¶ 6, Ex. C. (03/28/18 email at 9:52 p.m.). Whether these statements reflected Defendants' true intentions or negotiating tactics, the Court is limited to reviewing the parties' objective manifestations of intent. The subjective reason for Defendants' decision to no longer pursue the non-monetary terms is not relevant.[6]

---

[5] Defendants argue in their opposition that Plaintiff never indicated after April 19 that it believed the parties had reached a settlement agreement. Defendants contend that any reference to an "agreement" in their subsequent email correspondence related to their agreement to continue case management deadlines in this case until after the Federal Circuit ruled on the motion to stay. This misreads at least some of Plaintiff's emails. It is true that Plaintiff referenced the agreement to continue certain deadlines in this proceeding when responding to Defendants' discovery-related email (discussed below) (Johnson Decl., ¶ 20, Ex. 5 at 6), but at other times Plaintiff clearly stated its belief that the parties had reached a settlement agreement. See Johnson Decl., ¶ 20, Ex. 5 at 1 (Plaintiff stated that "it is our view that a settlement was agreed to" on April 19).

[6] As the Court has determined that there was no meeting of the minds regarding the non-monetary terms, then it does not need to reach Defendants' additional argument that there was also no meeting of the mind on other material terms, including the territory within which the royalties are owed, the scope of the release, and the venue for resolving disputes, or Plaintiff's argument that the parties intended to use the original MLA as a template for the settlement agreement.

11

## IV. DISCOVERY

Because the Court has concluded that there is no enforceable settlement agreement between the parties, it also addresses the issue of Plaintiff's responses to Defendants' discovery responses. Plaintiff served its first set of requests for production on March 22, 2018, and Defendants served their first set of requests for production and their first set of interrogatories on March 24, 2018. Johnson Decl., ¶ 18. Plaintiff served a second set of requests for production and a first set of interrogatories on April 3, 2018. Id. On April 23, 2018, Defendants served responses to Plaintiff's discovery requests and asked Plaintiff to provide an update on when it intended to serve its responses to Defendants' discovery requests. Johnson Decl., ¶¶ 19-20, Ex. 5. Plaintiff responded that the parties should focus on "winding up their agreement and related dismissals, etc." Johnson Decl., ¶ 20, Ex. 5 at 6.

Under Federal Rules of Civil Procedure 33 and 34, a party must respond to interrogatories and requests for production within 30 days after being served, unless a different time is stipulated to by the parties or ordered by the court. Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A). A party may move for an order compelling discovery responses, but the movant must certify that it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Based on a March 24, 2018 service date, Plaintiff's responses to Defendants' requests for production and interrogatories were due on April 24, 2018. Defendants ask the Court to compel Plaintiff to provide its response to the pending discovery requests within four days of the Court's ruling on the motion to enforce settlement because Plaintiff's discovery responses would have been due on April 23, if it were not for the purported settlement on April 19.

It appears that the parties have not yet satisfied their obligations to meet and confer because of the impasse they quickly reached over Plaintiff's discovery responses in light of Plaintiff's position that there was a settlement agreement and, therefore, no need to proceed with discovery. Now that the Court has ruled that there is no enforceable settlement agreement, a new question arises about whether discovery should go forward in this case while the parties await the Federal Circuit's ruling on MerchSource's appeal of the preliminary injunction order and as the

12

1  PTAB proceedings continue in the interim.

2  Accordingly, the parties are ordered to meet and confer on the propriety of discovery in view of the current procedural posture of the case. If they conclude that discovery should move forward, they are ordered to further meet and confer on the proper scope of discovery, considering, *inter alia*, proportionality in light of the relatively low amount in dispute (approximately $150,000 for Q4 2017 royalties, according to the parties' joint case management statement dated March 7, 2018), among other factors. The parties shall file a joint report with the Court within 14 days of this order setting forth the outcome of their discovery meet and confer efforts and a proposed revised case management schedule.

## V. CONCLUSION

For the reasons discussed above, the Court DENIES the motion and orders the parties to MEET AND CONFER on discovery and the case management schedule.

**IT IS SO ORDERED.**

Dated: May 22, 2018

ELIZABETH D. LAPORTE
United States Magistrate Judge