United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DODOCASE VR, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCHSOURCE, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-07088-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE AND DENYING PLAINTIFFS' MOTION FOR SANCTIONS**<br><br>Re: Dkt. Nos. 129, 140 |

Plaintiffs Dodocase VR, Inc ("Dodocase") and DDC Technology, LLC ("DDC") (together, "Plaintiffs") filed a motion to strike Defendants MerchSource LLC ("MerchSource") and Threesixty Brands Group LLC's ("Threesixty") (together, "Defendants") amended answer to the second amended complaint ("SAC").[1] Plaintiffs also filed a motion for sanctions against Defendants. Having reviewed the parties' submissions, the Court concludes that these matters are suitable for decision without a hearing. The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion to strike. The Court further DENIES Plaintiffs' motion for sanctions.

## I. BACKGROUND

On December 13, 2017, Plaintiff Dodocase filed its original complaint seeking declaratory judgment and injunctive relief. Dkt. No. 1. Plaintiffs filed a second amended complaint on January 07, 2019. Dkt. No. 98, SAC. Plaintiff Dodocase manufactured accessories for mobile devices, including virtual reality accessories for smartphones. Id., ¶¶ 10, 11. Plaintiff Dodocase

---

[1] As an initial matter, the briefs for both motions often refer to activities by "Defendants," but Defendant ThreeSixty was not a party to the MLA or otherwise involved in the activities or alleged activities on which plaintiffs' claims are based. Likewise, Plaintiff DDC was not a party to the MLA when it was executed. This Order often refers to "Defendants" or "Plaintiffs" for convenience but recognizes the limited roles of Defendant ThreeSixty and Plaintiff DDC in the underlying activities.

has been awarded multiple patents for its virtual reality accessories, including three patents that are at issue in this case. Id., ¶ 13. Those three patents are United States Patent No. 9,420,075, entitled "Virtual Reality Viewer and Input Mechanism," issued August 16, 2016 (the "'075 Patent"); United States Patent No. 9,723,117, entitled "Virtual Reality Viewer and Input Mechanism," issued on August 1, 2017 (the "'117 Patent"); and United States Patent No. 9,811,184, entitled "Virtual Reality Viewer and Input Mechanism," issued on November 7, 2017 (the "'184 Patent"). Id. The complaint refers to these three patents collectively as the "Dodocase Patents." Id.

MerchSource designs, sources, and distributes a wide-range of consumer goods, including toys, electronics, and home decor, to large retailers. Id., ¶ 17. MerchSource is wholly owned by ThreeSixty. Id., ¶ 19. Plaintiff Dodocase alleges that MerchSource sells, manufactures, designs, and/or imports certain products under the brand name "Sharper Image" that threaten to infringe the Dodocase Patents. Id., ¶ 20.

On or about June 16, 2016, MerchSource contacted Plaintiff Dodocase about obtaining a license to the '075 Patent. Id., ¶ 26. Subsequently, on or about October 3, 2016, MerchSource and Plaintiff Dodocase entered into a Master License Agreement regarding the Dodocase Patents ("MLA"). Id., ¶ 27. The MLA states that "MerchSource desires to manufacture and sell virtual reality viewer products having a capacitive touch input mechanism containing the Licensed IP." Id., ¶ 23. The MLA also provides that "MerchSource shall not (a) attempt to challenge the validity or enforceability of the Licensed IP; or (b) directly or indirectly, knowingly assist any Third Party in an attempt to challenge the validity or enforceability of the Licensed IP except to comply with any court order or subpoena." Id., ¶ 79.

Starting on or about June 9, 2017, MerchSource began contacting Plaintiff Dodocase to express dissatisfaction with the MLA. Id., ¶ 29. On or about July 10, 2017, MerchSource told Plaintiff Dodocase that in light of its perception that Plaintiff Dodocase was not enforcing its intellectual property sufficiently, MerchSource would "have no choice but to impute a zero percent royalty rate under the [MLA] in order to be similarly advantaged." Id., ¶ 30. On October 5, 2017, MerchSource sent Plaintiff Dodocase a letter which stated, "We have reviewed the

1 Licensed Patents, including the allowed claims of U.S. Patent Application Serial No. 15/448,785
2 [the application for the later-issued '184 Patent], and have concluded that all relevant claims are
3 invalid under 35 U.S.C. § 102 and/or § 103. Accordingly, MerchSource will not be paying
4 royalties on any products sold hereafter." Id., ¶ 32. Plaintiffs allege that MerchSource did not
5 identify any prior art for Plaintiff Dodocase to consider. Id. Plaintiff Dodocase responded that
6 refusal to pay royalties despite its continued manufacture, use, sale, and/or offer for sale of
7 products using the Dodocase Patents constituted a breach of the MLA. Id., ¶ 33. One day after
8 the deadline to cure the breach, on November 17, 2017, MerchSource provided a royalty check
9 and royalty report. Id., ¶ 36. The royalty report included a statement that "MerchSource considers
10 the dispute over royalty rate and owed royalties under the Agreement outstanding and not yet
11 resolved." Id. Plaintiffs allege that MerchSource made no further suggestion of patent invalidity.
12 Id. MerchSource has not paid royalties on products sold after October 5, 2017. Id., ¶¶ 52, 66, 92-
13 94.

14 On December 13, 2017, Plaintiff Dodocase filed its original complaint seeking declaratory
15 judgment and injunctive relief. Id., ¶ 38. On December 22, 2017, Defendants MerchSource LLC
16 and Threesixty Brands Group LLC (together, "Defendants") filed a motion for an extension of
17 time to answer or otherwise respond to the complaint. Id., ¶ 40. In their motion, Defendants
18 stated that they required more time to investigate the complaint's allegations, in part due to the
19 fact that the twenty-one day answer period under Rule 12 included the year-end holidays and
20 relevant MerchSource personnel and its attorneys had previously scheduled travel, holiday, and
21 vacation plans during that time. Id. The Court granted Defendants' request for a twenty-nine day
22 extension over the objection of Plaintiff. Dkt. Nos. 15 & 18.

23 On January 12, 2018, counsel for Plaintiff Dodocase and Defendants held a telephone
24 conference to discuss potential resolution of this case, including renegotiation of the MLA's
25 royalty option. Dkt. 98, ¶ 41-45. In anticipation of that meeting, Defendants' counsel requested
26 that Plaintiff Dodocase sign a non-disclosure agreement to allow "MerchSource to provide certain
27 information and documents to DODOcase that are confidential and/or protected by privilege or
28 attorney work product." Id., ¶ 42. Plaintiffs allege that it became clear that the "work product"

3

was alleged prior art. Id. Thus, Plaintiffs allege that Defendants' sought to "(a) use alleged prior art to extort a favorable settlement of this action and a running-royalty license to the DODOCASE Patents while simultaneously (b) shielding said alleged prior art from the public (including their competitors)" and Plaintiff Dodocase refused to execute the nondisclosure agreement because it believed that such an agreement would be unethical in light of Plaintiff's obligations of disclosure to the Patent Office for continuing applications and in future licensing discussions or litigation with third parties. Id., ¶ 43.

Although Plaintiff Dodocase did not sign the non-disclosure agreement, the parties still held the scheduled meeting but could not, however, reach agreement on resolution. Id., ¶ 45-46. Defendants stated that they were prepared to file challenges to the Dodocase Patents with the PTAB. Id., ¶ 46. On January 15, 2018, Defendants identified the three alleged prior art references for Plaintiff for the first time. Id., ¶ 47. Plaintiff Dodocase reviewed the information and told Defendants that it did not think the alleged prior art supported their claim of invalidity. Id., ¶ 48.

Defendants then filed three separate PTAB Petitions, challenging each of the three Dodocase Patents, on January 15, 2018. Id., ¶ 54. The PTAB Petitions rely on the same three "primary references": (1) U.S. Patent Publication No. 2013/0141360, which issued as U.S. Patent 9,423,827 ("Compton"); (2) a comment posted on a blog entitled, "Why Google Cardboard is Actually a Huge Boost for Virtual Reality" ("Gigaom"); and (3) a YouTube video entitled, "Use Google Cardboard without Magentometer (Enabling Magnetic Ring Support to Every Device)" ("Tech#"). Id., ¶ 55.

On February 2, 2018, Defendants answered the complaint and filed a counterclaim against Plaintiff Dodocase. Dkt. No. 22, Counterclaim. The counterclaim sought declaratory judgment that each of the three Dodocase Patents is invalid for at least the reasons set forth in the PTAB Petitions. Id., Counterclaim, ¶¶ 6-26.

As a result of the failed negotiations, the PTAB Petitions, and Defendant MerchSource's failure to make their royalty payment for the fourth quarter of 2017, Plaintiff terminated the MLA on February 14, 2018. Dkt. No. 98, SAC, ¶¶ 52-53. Section 3.6 of the MLA further provides: "Upon termination of this Agreement, MerchSource shall have no further obligation to pay any

fees to Licensor under this Article 3, except for royalties owed under this Section 3 and for the sale of Licensed Products during the Sell-Off Period, as applicable." Id., ¶ 78. Section 8.1.6 of the MLA provides: "Upon termination of any Term Sheet or this Agreement for any reason, MerchSource shall be entitled, for eighteen (18) months (the "Sell-Off Period") after termination, to continue to sell any Licensed Product, that is the subject of a purchase order, is in transit to a customer or MerchSource, or is in inventory with MerchSource at the time of termination. Such sales shall be made subject to all the provisions of the Agreement and any respective Term Sheet, including the payment of royalties which shall be due quarterly until the close of the Sell-Off Period." Id., ¶ 83.

On March 23, 2018, the Court granted Plaintiff Dodocase's motion for preliminary injunction and ordered Defendants to request a withdrawal of the PTAB Petitions. Dkt. No. 47. Defendants appealed the Court's order. On July 12, 2018, the Court ordered a stay in this case until the PTAB proceedings ended.

On October 16, 2018, DODOCASE transferred to DDC all right, title and interest in and to the DODOCASE Patents, including all causes of action and enforcement rights for past, current and future infringement of the DODOCASE Patents. Dkt. No. 98, SAC, ¶ 6. On January 7, 2019, Plaintiffs filed their second amended complaint.

On April 22, 2019, the Court of Appeal affirmed this Court's order granting Plaintiff Dodocase's motion for preliminary injunction. Dkt. No. 103, 104. The petition for panel rehearing was denied on July 10, 2019. Dkt. No. 113. On July 17, 2019, the Court ordered Defendants to withdraw their PTAB Petitions. Dkt. No. 115. The PTAB terminated the proceedings on August 16, 2019. Dkt. No. 119.

On September 25, 2019, at the request of the parties, the Court ordered the parties to file motions regarding: (1) When MerchSource provided sufficient Lear notice; and (2) Whether a sufficient Lear notice applies during the Sell-Off period under the MLA. The Court also lifted the stay.

On October 29, 2019, Defendants filed their amended answer to Plaintiffs' second amended complaint. On November 12, 2019, Plaintiffs filed a motion to strike Defendants'

5

1 amended answer to the second amended complaint. On December 2, 2019, Plaintiffs filed a

2 motion for rule 11 sanctions.

## II. LEGAL STANDARD

### A. Motion to Strike

A party must "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir.1979). While the Ninth Circuit has not directly addressed the issue, courts in this district have held that the heighten pleading standard of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), which followed Wyshak, applies to affirmative defenses. See, e.g., Pertz v. Heartland Realty Inv'rs, Inc., No. 19-CV-06330-CRB, 2020 WL 95636, at *1 (N.D. Cal. Jan. 8, 2020); Synopsys, Inc. v. Ubiquiti Networks, Inc., No. 17-CV-00561-WHO, 2017 WL 3485881, at *18 (N.D. Cal. Aug. 15, 2017). Thus, affirmative defenses must contain sufficient factual matter to state a defense "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

An affirmative defense absolves a defendant of liability "even where the plaintiff has stated a prima facie case for recovery." Quintana v. Baca, 233 F.R.D. 562, 564 (C.D. Cal. 2005). An attack on plaintiff's case-in-chief is not an affirmative defense; it is a negative defense. Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002). Negative defenses that are pled as affirmative defenses are generally found to be immaterial and are subject to a motion to strike under Rule 12(f). Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010). However, motions to strike a defense as insufficient are disfavored and they "will not be granted if the insufficiency of the defense is not clearly apparent." G & G Closed Circuit Events, LLC v. Nguyen, 2010 WL 3749284 at * 1 (N.D. Cal., Sept.23, 2010) citing 5C Wright & Miller § 1381, at 428; accord William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir.1984), vacated on other grounds, 478 U.S.

6

1015, 106 (1986).

### B. Motion for Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure states, in relevant part, as follows:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Rule 11 further provides that the court may impose sanctions upon attorneys or parties "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated...." Sanctions are appropriate: "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and where a litigant files a pleading or other paper for an 'improper purpose,' such as personal or economic harassment." Greenberg v. Sala, 822 F.2d 882, 885 (9th Cir. 1987). "Rule 11 sanctions shall be assessed if the paper filed in the district court and signed by an attorney … is frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986), abrogated on other grounds, Cooter & Gell v Hartmarx Corp., 496 U.S. 384 (1990).

When evaluating whether sanctions should be imposed under Rule 11, courts conduct "a two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry

before signing and filing it." Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005) (internal citation omitted). The standard is not a high one—an allegation that has "some plausible basis, [even] a weak one," is sufficient to avoid sanctions under Rule 11. United Nat. Ins. Co. v. R & D Latex Corp., 242 F.3d 1102, 1117 (9th Cir. 2001).

"A Rule 11 motion for sanctions is not an appropriate substitute for summary judgment proceedings. The Advisory Committee Notes for Rule 11 explain that 'Rule 11 motions ... should not be employed ... to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes.'" GN Resound A/S v. Callpod, Inc., No. C 11-04673 SBA, 2013 WL 5443046, at *4 (N.D. Cal. Sept. 30, 2013) (internal citation omitted). "[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).

### III. DISCUSSION

#### A. Motion to Strike

Plaintiffs move to strike Defendants' "additional" defenses numbers 1 (no infringement), 3 (prosecution history estoppel), 4 (limitation on damages), 5 (no costs), 8 (venue), 11 (unclean hands), and 12 (patent misuse) on the grounds that these defenses are deficient as a matter of law for failure to comply with the pleading standard. Defendants allege that five of the seven challenged defenses are not affirmative defenses but rather negative defenses and, as such, do not need to meet the heighten pleading requirement articulated in Twombly and Iqbal. As an initial matter, the Court finds that each of the defenses relates to issues that will necessarily be litigated for the merits of the case. These defenses, while boilerplate, are standard defenses.

#### 1. First "Additional" Defense (No Infringement)

Defendants' first "additional" defense alleges that Defendants "have not infringed nor caused to be infringed, either literally or under the doctrine of equivalents, any valid and asserted claim of the '075 Patent, the '117 Patent, or the '184 Patent." Dkt. No. 126 at 14. This constitutes an attack on Plaintiffs' case-in-chief and is not an affirmative defense.

####    2.   Third "Additional" Defense (Prosecution History Estoppel)

Defendants' third "additional" defense, prosecution history estoppel, may act to estop an equivalence argument under the doctrine of equivalents. The Federal Circuit did not rule on whether prosecution history estoppel is an affirmative or a negative defense in a case where it determined that the argument was sufficiently pled and therefore not waived. Pacific Coast Marine Windshields, Ltd. v. Malibu Boats, LLC., 739 F.3d 694, 701 n.4 (Fed. Cir. 2014). For the purposes of this action, since the SAC did not specify whether or not it would assert infringement under the doctrine of equivalents, the Court determines that the Defendants' prosecution history estoppel defense is sufficiently pled in abundance of caution.

####    3.   Fourth and Fifth "Additional" Defenses (Limitation on Damages and No Costs)

Defendants' fourth (limitation on damages based on 35 U.S.C. § 287) and fifth (no costs based on 35 U.S.C. § 288) "additional" defenses are generally limitations on damages rather than statutory defenses. See, e.g., Bradford Co. v. Jefferson Smurfit Corp., No. 2000-1511, 2001 WL 35738792, at *9 (Fed. Cir. Oct. 31, 2001). However, district courts, including this Court, generally permit defendants to employ these sections as affirmative defenses in an answer. See, e.g., Vistan Corp. v. Fadei USA, Inc., No. C-10-4862 JCS, 2011 WL 1544796, at *1 (N.D. Cal. Apr. 25, 2011) (listing "failure to properly mark ... pursuant to 35 U.S.C. § 287" as an affirmative defense); In re Katz Interactive Call Processing Patent Litigation, 821 F. Supp. 2d 1135, 1158 (C.D. Cal. 2011) ("In its answer, [the defendant] argued that [the plaintiff] failed to comply with 35 U.S.C. § 287(a) and is therefore barred from recovering any pre-suit damages."); Sun Microsystems, Inc. v. Versata Enterprises, Inc., 630 F. Supp. 2d 395, 412 (D. Del. 2009) (finding that allowing defenses based on these sections would not unfairly prejudice the plaintiff.) Although Defendants may have not been required to assert their sections 287 and 288 arguments in their amended answer as affirmative defenses, the Court finds that these arguments were properly asserted.

####    4.   Eighth "Additional" Defense (Venue)

Plaintiffs claim that Defendants have waived their eighth "additional" defense regarding venue because Defendants did not raise it in their initial answer. However, the SAC added new

9

claims, parties, allegations, and facts. These additions may have created new venue issues. Courts have found that when a party asserts a defense under Rule 12(h)(1), such as venue, that party is not required to point to "identifiable facts" because the "only allegation material to a Rule 12(h)(1) defense is that the defense exists." Ear v. Empire Collection Authorities, Inc., No. 12-1695-SC, 2012 WL 3249514, at *2 (N.D. Cal. Aug. 7, 2012). However, other Courts have considered whether an answer contains sufficient facts regarding the nature of a venue defense. See, e.g., Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc., No. EDCV 11-197 RSWL, 2011 WL 3809933, at *10 (C.D. Cal. Aug. 25, 2011). Defendants assert that their denial of the factual allegations contained in paragraph 25 of the SAC directed to venue is sufficient. Without deciding whether the challenge to venue has been waived, the Court agrees.

### 5. Eleventh "Additional" Defense (Unclean Hands)

While the paragraph that discusses Defendants' unclean hands defense lacks sufficient facts, Defendants have alleged that Plaintiffs acted inequitably, fraudulently, and deceptively elsewhere in the answer. See Dkt. No. 126 at 17 (Fifteenth and Sixteenth Additional Defenses). Defendants allege that Plaintiff Dodocase failed to disclosure certain information when the parties executed the MLA and, had Defendant MechSource known the true facts, it would not have executed the MLA. Further, Defendants allege that Plaintiff Dodocase and Mr. Buckley were aware of information that was material to the patentability of Plaintiffs' claims but failed to disclose this information to the Examiner, which would have precluded issuance of the claims. This is sufficient.

### 6. Twelfth "Additional" Defense (Patent Misuse)

Patent misuse prevents a patent holder from exploiting its patent to "acquire a monopoly not embraced in the patent." Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (quoting Transparent–Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 643 (1947)). An alleged infringer can successfully raise patent misuse as an affirmative defense by showing "that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." Windsurfing Int'l Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986) (quoting Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 343 (1971)).

10

For example, a "patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful per se." Brulotte v. Thys Co., 379 U.S. 29, 32 (1964).

Here, Defendants' twelfth additional defense alleges that Plaintiffs' claims are barred by the doctrine of patent misuse, in part, because of Plaintiffs' demand for royalties under the MLA for 18 months after the Asserted Patents have expired, lapsed, are invalid, or unenforceable. Defendants' patent misuse defense is sufficiently pled.

### B. Motion for Sanctions

Turning to Plaintiffs' motion for sanctions, Plaintiffs contend that Defendants' denials are particularly concerning "given that (a) the Second Amended Complaint was filed in January 2019, (b) the substantially-similar original complaint was filed in December 2017, (c) Defendants have already once amended their answers after Plaintiffs' notice of violations, and (d) many of the allegations involve the conduct/communications of counsel that signed the pleading." Dkt. No. 140 at 4. Plaintiffs argue that Defendants' denials are an abuse of the judicial process because they have deprived Plaintiffs of the procedural tool of Rule 12(c). Dkt. No. 141 at 2. Plaintiffs state that their Rule 11 concerns were raised with Defendants to enable Plaintiffs to "comply with the agreement of the Parties (and Order of this Court) to file cross motions regarding contract liability and the Lear issue." Id. at 3. Plaintiffs argue that if Defendants had amended their pleadings to conform their answers to the alleged evidence in their possession, Plaintiffs could have filed a cross-motion for judgment on the pleadings. Id. Plaintiffs complain that the Parties may need to engage in further motion practice. Furthermore, Plaintiffs state that the allegations in Plaintiffs' motion for sanctions (and Defendants' denials thereto) are relevant and set forth as material facts in Plaintiffs' opposition to Defendants' Lear motion. Defendants argue that Plaintiffs' motion is an effort to short-circuit discovery and avoid proper procedures by asking the Court, under the guise of Rule 11, to adjudicate factual issues based on Plaintiffs' "evidence" and arguments. Dkt. No. 139 at 1. Defendants argue that Plaintiffs have conducted no discovery on the challenged allegations and that Plaintiffs urge the Court to simply disregard the possibility of any contrary evidence or argument that Defendants might present in this action

As an initial matter, this Court's order regarding the cross-motions was limited to very

specific questions regarding: 1) when Defendants provided sufficient Lear notice, and 2) whether a sufficient Lear notice applies during the Sell-Off period of the MLA, as outlined in the parties' joint motion to lift the stay. Dkt. Nos. 122, 123. The cross-motions contemplated by the order were not regarding contract liability generally. Furthermore, in deciding Defendants' Lear motion, all allegations of fact in the complaint will be taken as true and construed in the light most favorable to Plaintiffs. McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

### 1. Allegations of paragraph 32

In paragraph 32 of the SAC, Plaintiffs allege in part that:

> MerchSource did not identify any prior art for DODOCASE to consider and, despite multiple opportunities and requests to do so, Defendants did not identify any prior art until January 15, 2018. Instead, Defendants continued attempts to renegotiate the MLA to a lower royalty rate (including discussions about extending the term of the MLA to the life of the DODOCASE Patents), while still marking their products with the '075 Patent.

Although not within the denial for that particular paragraph, Defendants admit in their amended answer that specific prior art references were not identified until January 15, 2018. Dkt. No. 126, ¶ 47. As to the remainder of the allegation, Defendants disagree with Plaintiffs' characterization of the events because Defendants claim it was Plaintiffs that did not want to receive the alleged prior art while settlement discussions were ongoing to avoid having to report that prior art to the PTO in Plaintiff Dodocase's related pending patent application.

Plaintiffs attached a letter where Defendants' counsel is purported to be renegotiating the MLA. However, Defendants argue that Plaintiffs' allegation "implies that (i) defendants preferred or desired the MLA to be effective, (ii) that a lower royalty rate was the only relevant term, (iii) that identification of the prior art was linked to renegotiating the MLA, and (iv) that the settlement discussions were a 'continuation' of earlier discussions." Dkt. No. 139 at 5-6. Defendants state that they do not agree with any of these presumptions and inferences. Finally, the parties disagree on Plaintiffs' use of the word "marking" and "products" in this allegation.

Here, Plaintiffs' allegations in the SAC could be construed as making legal conclusions or assertions or ascribing motives or intentions to Defendants. Defendants have admitted that they did not identify any alleged prior art until January 15, 2018. The remaining disagreements justify

12

the denial of this allegation.

### 2. Allegations of paragraph 39

In paragraph 39 of the SAC, Plaintiffs allege:

> Between December 19 and 22, 2017, Defendants (via counsel Mark C. Johnson) requested an extension of time to answer or otherwise plead. In support of these requests, Defendants cited: "the holidays," "the potential opportunity for the parties to resolve this dispute without Court intervention," attorneys "out of the office," individuals from MerchSource "unavailable," and Defendants' counsel's location in Cleveland.

Defendants' amended answer states, "Defendants deny that 'via counsel Mark C. Johnson' Defendants' Defendants 'requested an extension of time' between December 19 and 22, 2017." Dkt. No. 126, ¶ 39. Defendants discuss a motion for extension filed with the Court and claim that "[t]he grounds for the motion are more fully and accurately set forth therein, and otherwise Defendants deny the allegation" of paragraph 39 of the SAC. Id.

To support Plaintiffs' allegations, Plaintiffs have attached a December 19, 2017 email from Mark C. Johnson stating, "Given the holidays and the potential opportunity for the parties to resolve this dispute without Court intervention, MerchSource would like a 30 day extension of time until February 5 [] for MerchSource to respond to the complaint." See Dkt. No. 136-1, Decl. Haller, ¶ 8, Ex. F at 1. Defendants' opposition fails to address why its amended answer explicitly denies that it requested an extension of time via counsel Mark C. Johnson given the email attached. Defendants' opposition also does not address why it failed to admit that Defendants cited "the holidays" and "the potential opportunity for the parties to resolve this dispute without Court intervention" as a reason for it request for an extension of time. Defendants' only response is a vague explanation that "to the extent the allegations of ¶ 39 accurately and completely describe the requested extension as contained in ECF 14 [Defendants' motion for extension], then the allegations were admitted in the Answer when defendants admitted filing ECF 14. ECF 126, ¶¶ 39-40."

The Court is unpersuaded by Defendants' arguments. Defendants must revise their denial and admit the allegations contained in this paragraph, to the extent those allegations are true.

### 3. Allegations of paragraph 42 & 43

In paragraph 42 of the SAC, Plaintiffs allege:

> In anticipation of that meeting, Defendants' counsel requested that DODOCASE sign a non-disclosure agreement to allow "MerchSource to provide certain information and documents to DODOcase that are confidential and/or protected by privilege or attorney work product." It became clear during discussions with Defendants' counsel that the "work product" was alleged prior art.

Defendants admitted that one draft of a "Restricted Information Agreement" contained, in part, the quoted language, but otherwise Defendants denied the allegations of this paragraph. Dkt. No. 126, ¶ 42.

Plaintiffs argue that Defendants use of the word "draft" is incorrect because this agreement was executed by Defendant MerchSource (although not executed by Plaintiff Dodocase). However, Plaintiffs' counsel never executed the agreement and provided a revised version. Thus, Defendants' use of the word "draft" is not improper.

In paragraph 43 of the SAC, Plaintiffs allege:

> Thus, Defendants sought to (a) use alleged prior art to extort a favorable settlement of this action and a running-royalty license to the DODOCASE Patents while simultaneously (b) shielding said alleged prior art from the public (including their competitors). Counsel for DODOCASE explained that such an agreement would be unethical given DODOCASE's obligations of disclosure to the Patent Office for continuing applications and in future licensing discussions or litigation with third parties. Accordingly, DODOCASE did not execute the nondisclosure agreement that was signed and presented by Defendants.

Defendants admitted that they did not receive from Plaintiffs an executed Restricted Information Agreement but stated that they lack knowledge or information sufficient to form a belief about whether Plaintiff Dodocase executed such agreement. Dkt. No. 126, ¶ 43. Defendants denied the other allegations in this paragraph. Id.

Plaintiffs argue that by failing to execute a modified version of the non-disclosure agreement, Defendants' intention was to shield the prior art under the guise of a non-disclosure agreement protecting "work product." Further, Plaintiffs argue that Defendants' refusal to admit that they used the prior art to leverage a more favorable settlement is improper as evidenced by an email from Defendants' counsel.

Plaintiffs' allegations relate to Plaintiffs' inferences regarding the mental state and

intention of Defendants when Defendants presented the nondisclosure agreement and refused to disclose the alleged prior art. The Court will not decide what Defendants' intentions were at this juncture. Defendants' responses are proper and entirely consistent with the requirements of Fed. R. Civ. Pro. 8.

### 4. Allegations of paragraph 45

In paragraph 45 of the SAC, Plaintiffs allege:

> During that [telephonic] conference, the parties discussed potential resolution including renegotiation of the terms of the still-in-force MLA to maintain a running royalty (including options for a running royalty for the life of the DODOCASE Patents).

Defendants admitted that the parties discussed potential resolution during the conference but otherwise deny the allegations in this paragraph. Dkt. No. 126, ¶ 45.

Plaintiffs claim Defendants' denial is improper as evidenced by an email sent after the conference. See Dkt. No. 136-1, Decl. Haller, ¶ 5, Ex. C. Defendants state that they remember the discussion at the conference differently and that the email is not definitive proof of what was discussed during the conference. In Plaintiffs' reply, they determined that this admission is not necessary.

### 5. Allegations of paragraph 46

In paragraph 46 of the SAC, Plaintiffs allege:

> Unable to reach agreement, Defendants threatened that they were prepared to file challenges to the DODOCASE Patents with the PTAB, though still refusing to provide the alleged prior art upon which they intended to rely. Moreover, citing the scheduled increase in PTAB filing fees, Defendants created an artificial deadline (of Monday, January 15, 2018) for discussions regarding resolution.

Defendants admitted that the parties were unable to resolve their differences and disputes, and otherwise deny the allegations in this paragraph. Dkt. No. 126, ¶ 46.

Plaintiffs insist that by informing Plaintiffs on January 13, 2018 that Defendants "will begin filing the petition no later than 3:00 pm EST on Monday [January 15, 2018]," Plaintiffs "will be made aware of the prior art and MerchSource's invalidity arguments on Monday if the parties do not reach prior agreement," and "[t]he only pathway for DODOcase to avoid public disclosure is to come to terms with MerchSource…." Defendants were expressly threatening

Plaintiffs. Dkt. No. 140 at 8 (quoting Dkt. No. 136-1, Decl. Haller, ¶ 6, Ex. D). Further, Defendants offered to give Plaintiffs an opportunity to examine the alleged prior art if Plaintiffs wired $27,000.

Defendants argue that they did not "threaten" Plaintiffs and did not create an "artificial deadline" for discussions regarding resolution because waiting one more day to file the PTAB petitions would have resulted in almost $30,000 of additional PTAB filing fees. Furthermore, the parties disagree regarding the reason why Defendants did not provide the alleged prior art.

Whether Defendants "threatened" Plaintiff or created an "artificial deadline" is not a question appropriate for resolution on this motion. The Court finds that Defendants' denial is not legally or factually baseless from an objective perspective.

### 6. Allegations of paragraph 47

In paragraph 47 of the SAC, Plaintiffs allege:

After DODOCASE refused to acquiesce to Defendants' attempts to pressure a more favorable royalty rate, and after Defendants threatened to file three PTAB petitions by 3:00 p.m. Eastern on Monday January 15, 2018, Defendants provided, for the first time, identification of three alleged prior art references (discussed below) at 12:54 p.m. Eastern on January 15.

In Defendants' amended answer, Defendants admit:

"they honored a request from DODOcase's counsel, Timothy Haller, to attempt to settle the parties dispute prior to disclosing any prior art references and consequently, Defendants waited until January 15, 2019 before specifically identifying to DODOcase prior art references on which the PTAB petitions would be based, but otherwise deny the allegations of this paragraph.

Dkt. No. 126 at 47.

Plaintiffs state that Defendants' claim is unwarranted by the facts and that "it is notable that there is no such request (or contemporaneous memorialization of such a request) [from DODOcase's counsel, Timothy Haller] in the dozens of emails between counsel." Dkt. No. 140 at 9. Furthermore, Plaintiffs argue that in an email on January 13, 2018, Plaintiffs' counsel repeated its request for the alleged prior art and Defendants did not provide the alleged prior art. Id. This is an ongoing factual dispute that is not appropriate for decision on this motion.

### 7. Allegations of paragraph 48

In paragraph 48 of the SAC, Plaintiffs allege:

DODOCASE reviewed the alleged prior art in Defendants' artificially created 2-hour timeframe, promptly determined that Defendants did not have legitimate support for their claims of invalidity, and conveyed its position to Defendants at 3:39 p.m. Eastern on January 15.

In their amended answer, Defendants state that they "lack knowledge or information sufficient to form a belief about the truth of the allegations and therefore deny the same." Dkt. No. 126 at 48.

Plaintiffs argue they conveyed their position regarding Defendants' alleged prior art at 3:39 PM Eastern on January 15, 2018 by email. See Dkt. No. 136-1, Decl. Haller, ¶ 6, Ex. D at p 1, email of January 15, 2018 at 2:39:34 PM CST. Defendants complain that the allegation is directed entirely at activities Plaintiffs undertook and what the Plaintiffs intended to convey and, thus, Defendants lack any knowledge regarding what Plaintiffs' reviewed. Defendants argue that "[i]f plaintiffs want an admission as to whether the referenced email was received by defendants on January 15th, then that should have been the allegation." Dkt. No. 139 at 12. The Court agrees Defendants' denial was warranted given Plaintiffs' framing of the allegation.

### 8. Allegations of paragraph 52, 92, & 94

In paragraphs 52, 92, and 94 of the SAC, Plaintiffs allege:

52. Finally, as anticipated, Defendant MerchSource failed to make its payment for Q4 royalties on January 30, 2018 and, despite having received written notice of material anticipatory breach (via email of January 14, 2018), Defendant MerchSource failed to cure its breaches of the MLA (including its payment, marking, and no-challenge obligations) by the February 13, 2018 cure deadline.

92. MerchSource breached Section 3.1 of the MLA on January 30, 2018 by failing to "pay Licensor the Royalty Rate on all Licensed Products sold by MerchSource or its Affiliates" for the fourth quarter of 2017.

94. MerchSource further breached Section 3.2 of the MLA on January 30, 2018 by failing to provide the required Royalty Report "reflecting the quantities of Licensed Products Sold by MerchSource during" the quarter ending on December 31, 2017, "along with all information necessary to calculate the royalties in accordance with the Royalty Rates."

In their amended answer, Defendants denied each of these allegations in their entirety.

Plaintiffs argue that Defendants cannot produce evidence that they made payments for Q4 royalties and that Defendants fail to admit that it breached the MLA. Defendants argue that Plaintiffs' allegations are problematic because they "inextricably combine pseudo-factual statements and legal conclusions—legal conclusion that defendants deny." Dkt. No. 139 at 13. Plaintiffs argue, "[i]f MerchSource did not breach the MLA, there would be no lawsuit." Dkt. No. 141 at 7.

Plaintiffs' position that Defendants must admit that there was a breach of the MLA is highly unreasonable. Defendants do not agree with Plaintiffs' legal conclusion and the resolution of this disagreement is not proper at this time. The Court will not treat this Rule 11 motion as a motion for summary judgment.

## IV. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to strike. The Court strikes Defendants' first "additional" defense without leave to amend.

Having reviewed both Plaintiffs' motion to strike and motion for rule 11 sanctions, this Court does not find that Defendants' amended answer was so frivolous and designed for the improper purpose of harassing Plaintiffs as to warrant harsh sanctions under Rule 11. The Court DENIES Plaintiffs' motion for sanctions. However, Defendants should amend their response to paragraph 39.

**IT IS SO ORDERED.**

Dated: January 22, 2020

JOSEPH C. SPERO
United States Magistrate Judge

18