UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DODOCASE VR, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCHSOURCE, LLC, et al.,<br><br>Defendants. | Case No. 17-cv-07088-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR DECLARATION OF RIGHTS AND OBLIGATIONS UNDER LEAR, INC. V. ADKINS, 395 U.S. 653 (1969)**<br><br>Re: Dkt. No. 128 |

On November 08, 2019, Defendant MerchSource, LLC ("MerchSource") filed a motion for declaration of rights and obligations under Lear, Inc. v. Adkins, 395 U.S. 653 (1969) against Plaintiffs Dodocase VR, Inc ("Dodocase") and DDC Technology, LLC ("DDC") (together, "Plaintiffs"). For the reasons stated on the record during the hearing and for those set forth below, the Court GRANTS Defendant's motion for declaration of rights and obligations under Lear, Inc. v. Adkins, 395 U.S. 653 (1969).

## I. BACKGROUND

On December 13, 2017, Plaintiff Dodocase filed its original complaint seeking declaratory judgment and injunctive relief. Dkt. No. 1. Plaintiffs filed a second amended complaint on January 07, 2019. Dkt. No. 98. Plaintiff Dodocase manufactured accessories for mobile devices, including virtual reality accessories for smartphones. Id., ¶¶ 10, 11. Plaintiff Dodocase has been awarded multiple patents for its virtual reality accessories, including three patents that are at issue in this case. Id., ¶ 13. Those three patents are United States Patent No. 9,420,075, entitled "Virtual Reality Viewer and Input Mechanism," issued August 16, 2016 (the "'075 Patent"); United States Patent No. 9,723,117, entitled "Virtual Reality Viewer and Input Mechanism," issued on August 1, 2017 (the "'117 Patent"); and United States Patent No. 9,811,184, entitled

"Virtual Reality Viewer and Input Mechanism," issued on November 7, 2017 (the "'184 Patent"). Id. The complaint refers to these three patents collectively as the "Dodocase Patents." Id.

MerchSource designs, sources, and distributes a wide-range of consumer goods, including toys, electronics, and home decor, to large retailers. Id., ¶ 17. MerchSource is wholly owned by ThreeSixty. Id., ¶ 19. Plaintiff Dodocase alleges that MerchSource sells, manufactures, designs, and/or imports certain products under the brand name "Sharper Image" that threaten to infringe the Dodocase Patents. Id., ¶ 20.

On or about June 16, 2016, MerchSource contacted Plaintiff Dodocase about obtaining a license to the '075 Patent. Id., ¶ 26. Subsequently, on or about October 3, 2016, MerchSource and Plaintiff Dodocase entered into a Master License Agreement regarding the Dodocase Patents ("MLA"). Id., ¶ 27. The MLA states that "MerchSource desires to manufacture and sell virtual reality viewer products having a capacitive touch input mechanism containing the Licensed IP." Id., ¶ 28. The MLA also provides that "MerchSource shall not (a) attempt to challenge the validity or enforceability of the Licensed IP; or (b) directly or indirectly, knowingly assist any Third Party in an attempt to challenge the validity or enforceability of the Licensed IP except to comply with any court order or subpoena." Id., ¶ 79.

Starting on or about June 9, 2017, MerchSource began contacting Plaintiff Dodocase to express dissatisfaction with the MLA. Id., ¶ 29. On or about July 10, 2017, MerchSource told Plaintiff Dodocase that in light of its perception that Plaintiff Dodocase was not enforcing its intellectual property sufficiently, MerchSource would "have no choice but to impute a zero percent royalty rate under the [MLA] in order to be similarly advantaged." Id., ¶ 30. On October 5, 2017, MerchSource sent Plaintiff Dodocase a letter which stated, "We have reviewed the Licensed Patents, including the allowed claims of U.S. Patent Application Serial No. 15/448,785 [the application for the later-issued '184 Patent], and have concluded that all relevant claims are invalid under 35 U.S.C. § 102 and/or § 103. Accordingly, MerchSource will not be paying royalties on any products sold hereafter." Id., ¶ 32. Plaintiffs allege that MerchSource did not identify any prior art for Plaintiff Dodocase to consider. Id. Plaintiff Dodocase responded that refusal to pay royalties despite its continued manufacture, use, sale, and/or offer for sale of

products using the Dodocase Patents constituted a breach of the MLA.  Id., ¶ 33.  One day after the deadline to cure the breach, on November 17, 2017, MerchSource provided a royalty check and royalty report.  Id., ¶ 36.  The royalty report included a statement that "MerchSource considers the dispute over royalty rate and owed royalties under the Agreement outstanding and not yet resolved."  Id.  Plaintiffs allege that MerchSource made no further suggestion of patent invalidity.  Id.  MerchSource has not paid royalties on products sold after October 5, 2017.  Id., ¶¶ 52, 66, 92-94.

On December 13, 2017, Plaintiff Dodocase filed its original complaint seeking declaratory judgment and injunctive relief.  Id., ¶ 38.  On December 22, 2017, Defendants MerchSource LLC and Threesixty Brands Group LLC (together, "Defendants") filed a motion for an extension of time to answer or otherwise respond to the complaint.  Id., ¶ 40.  In their motion, Defendants stated that they required more time to investigate the complaint's allegations, in part due to the fact that the twenty-one day answer period under Rule 12 included the year-end holidays and relevant MerchSource personnel and its attorneys had previously scheduled travel, holiday, and vacation plans during that time.  Id.  The Court granted Defendants' request for a twenty-nine day extension over the objection of Plaintiff Dodocase.  Dkt. Nos. 15 & 18.

On January 12, 2018, counsel for Plaintiff Dodocase and Defendants held a telephone conference to discuss potential resolution of this case, including renegotiation of the MLA's royalty option.  Dkt. 98, ¶ 41-45.  In anticipation of that meeting, Defendants' counsel requested that Plaintiff Dodocase sign a non-disclosure agreement to allow "MerchSource to provide certain information and documents to DODOcase that are confidential and/or protected by privilege or attorney work product."  Id., ¶ 42.  Plaintiffs allege that it became clear that the "work product" was alleged prior art.  Id.  Thus, Plaintiffs allege that Defendants' sought to "(a) use alleged prior art to extort a favorable settlement of this action and a running-royalty license to the DODOCASE Patents while simultaneously (b) shielding said alleged prior art from the public (including their competitors)" and Plaintiff Dodocase refused to execute the nondisclosure agreement because it believed that such an agreement would be unethical in light of Plaintiff's obligations of disclosure to the Patent Office for continuing applications and in future licensing discussions or litigation

3

with third parties.  Id., ¶ 43.

Although Plaintiff Dodocase did not sign the non-disclosure agreement, the parties still held the scheduled meeting but could not, however, reach agreement on resolution.  Id., ¶ 45-46. Defendants stated that they were prepared to file challenges to the Dodocase Patents with the PTAB.  Id., ¶ 46.  On January 15, 2018, Defendants identified the three alleged prior art references for Plaintiff Dodocase for the first time.  Id., ¶ 47.  Plaintiff Dodocase reviewed the information and told Defendants that it did not think the alleged prior art supported Defendants' claim of invalidity.  Id., ¶ 48.

Defendants then filed three separate PTAB Petitions, challenging each of the three Dodocase Patents, on January 15, 2018.  Id., ¶ 54.  The PTAB Petitions rely on the same three "primary references": (1) U.S. Patent Publication No. 2013/0141360, which issued as U.S. Patent 9,423,827 ("Compton"); (2) a comment posted on a blog entitled, "Why Google Cardboard is Actually a Huge Boost for Virtual Reality" ("Gigaom"); and (3) a YouTube video entitled, "Use Google Cardboard without Magentometer (Enabling Magnetic Ring Support to Every Device)" ("Tech#").  Id., ¶ 55.

On February 2, 2018, Defendants answered the complaint and filed a counterclaim against Plaintiff Dodocase.  Dkt. No. 22.  The counterclaim sought declaratory judgment that each of the three Dodocase Patents is invalid for at least the reasons set forth in the PTAB Petitions.  Id., Counterclaim, ¶¶ 6-26.

As a result of the failed negotiations, the PTAB Petitions, and Defendant MerchSource's failure to make their royalty payment for the fourth quarter of 2017, Plaintiff Dodocase terminated the MLA on February 14, 2018.  Dkt. No. 98, ¶¶ 52-53.  Section 3.6 of the MLA further provides: "Upon termination of this Agreement, MerchSource shall have no further obligation to pay any fees to Licensor under this Article 3, except for royalties owed under this Section 3 and for the sale of Licensed Products during the Sell-Off Period, as applicable."  Id., ¶ 78.  Section 8.1.6 of the MLA provides: "Upon termination of any Term Sheet or this Agreement for any reason, MerchSource shall be entitled, for eighteen (18) months (the "Sell-Off Period") after termination, to continue to sell any Licensed Product, that is the subject of a purchase order, is in transit to a

4

customer or MerchSource, or is in inventory with MerchSource at the time of termination. Such sales shall be made subject to all the provisions of the Agreement and any respective Term Sheet, including the payment of royalties which shall be due quarterly until the close of the Sell-Off Period." Id., ¶ 83. Defendant MerchSource continues to mark Defendants' products with the '075 Patent. Id., ¶ 96).

On March 23, 2018, the Court granted Plaintiff Dodocase's motion for preliminary injunction and ordered Defendants to request a withdrawal of the PTAB Petitions. Dkt. No. 47. Defendants appealed the Court's order. On July 12, 2018, the Court ordered a stay in this case until the PTAB proceedings ended.

On October 16, 2018, DODOCASE transferred to DDC all right, title and interest in and to the DODOCASE Patents, including all causes of action and enforcement rights for past, current and future infringement of the DODOCASE Patents. Dkt. No. 98, SAC, ¶ 6. On January 7, 2019, Plaintiffs filed their second amended complaint.

On April 22, 2019, the Court of Appeal affirmed this Court's order granting Plaintiff Dodocase's motion for preliminary injunction. Dkt. No. 103, 104. The petition for panel rehearing was denied on July 10, 2019. Dkt. No. 113. On July 17, 2019, the Court ordered Defendants to withdraw their PTAB Petitions. Dkt. No. 115. The PTAB terminated the proceedings on August 16, 2019. Dkt. No. 119.

On September 25, 2019, at the request of the parties, the Court ordered the parties to file motions regarding: (1) When MerchSource provided sufficient Lear notice; and (2) Whether a sufficient Lear notice applies during the Sell-Off period under the MLA. Dkt. No. 123. The Court also lifted the stay. Id. On November 8, 2019, Defendant MerchSource filed this motion. Dkt. No. 128.

## II.     LEGAL STANDARD

### A.     Legal Standard Under Rule 12(c)

Defendant MerchSource's motion is styled as a "Motion for Declaration Re Lear Notice" but appears to be a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). At the hearing, Defendants did not object to the Court treating this motion as a

motion for judgment on the pleadings.   The standard applied to a motion for judgment on the

pleadings under Rule 12(c) is the same as that applied to a motion to dismiss for failure to state a

claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1054 n.4 (9th Cir.

2011).  Dismissal for failure to state a claim is a ruling on a question of law.  Parks School of

Business, Inc., v. Symington, 51 F.3d 1480, 1483 (9th Cir. 1995).  "The issue is not whether

plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."

Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Review is limited to the

contents of the complaint, Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994),

including documents physically attached to the complaint or documents the complaint necessarily

relies on and whose authenticity is not contested.  Lee v. County of Los Angeles, 250 F.3d 668,

688 (9th Cir. 2001).  Allegations of fact in the complaint must be taken as true and construed in

the light most favorable to the non-moving party.  Sprewell v. Golden State Warriors, 266 F.3d

979, 988 (9th Cir. 2001).  The court need not, however, "accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences."  Id.

## III.    DISCUSSION

In Plaintiffs' second amended complaint, Plaintiffs sought an order finding that Defendant

MerchSource breached the MLA and ordering Defendants to promptly provide payment for

royalties due at least through January 15, 2018.  Defendant MerchSource argues that it is excused,

pursuant to Lear, Inc. v. Adkins, 395 U.S. 653 (1969) and its progeny, from paying patent

royalties that were allegedly due after October 5, 2017, pending final resolution of the licensed

patents' validity.  This is because Defendant MerchSource contends that it sent a notice sufficient

to trigger Lear protections on October 5, 2017 when it provided Plaintiff Dodocase with written

notice that (i) MerchSource would no longer make any royalty payments pursuant to the MLA (ii)

for the reason that MerchSource believed that the licensed patents are invalid under 35 U.S.C. §§

102/103.

### A.       Lear Doctrine and the Kohle Requirements

In Lear, Inc. v. Adkins, 395 U.S. 653 (1969) ("Lear"), the Supreme Court declined to estop

6

a patent licensee from contesting the validity of a licensed patent. <u>Id.</u> at 674. The court also considered whether "overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts." <u>Lear</u>, 395 U.S. at 673. The Supreme Court answered in the affirmative because

> "Licensees may often be the only individuals with enough economic incentive to challenge the patentability of an inventor's discovery. If they are muzzled, the public may continually be required to pay tribute to would-be monopolists without need or justification. We think it plain that the technical requirements of contract doctrine must give way before the demands of the public interest...."

<u>Lear</u>, 395 U.S. at 670. The Court reasoned that such a requirement would be inconsistent with the aims of federal patent policy, because this would "give the licensor an additional economic incentive to devise every conceivable dilatory tactic in an effort to postpone the day of final judicial reckoning" and "the cost of prosecuting slow-moving trial proceedings and defending an inevitable appeal might well deter any licensees from attempting to prove patent invalidity in the courts." <u>Id.</u> at 673-74.

In <u>Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co</u>, 112 F.3d 1561 (Fed. Cir. 1997) ("<u>Kohle</u>"), the Federal Circuit limited <u>Lear's</u> holding, finding that a licensee cannot invoke the protections of the <u>Lear</u> doctrine until it "(i) actually ceases payment of royalties, and (ii) provides notice to the licensor that the reason for ceasing payment of royalties is because it has deemed the relevant claims to be invalid." <u>Id.</u> at 1568; <u>see also</u> <u>Go Med. Indus. Pty., Ltd. v. Inmed Corp.</u>, 471 F.3d 1264, 1273 (Fed. Cir. 2006). The Ninth Circuit in <u>Rite-Nail Packaging Corp. v. Berryfast, Inc.</u>, 706 F.2d 933, 936 (9th Cir. 1983), cited by <u>Kohle</u>, explained that "a licensee need not institute suit challenging the validity of the patent" but the licensee "must clearly notify the licensor that the licensee is challenging the patent's validity." <u>Id.</u> at 936-47.

Here, it is undisputed that on October 5, 2017, Defendant MerchSource sent Plaintiff Dodocase a letter stating that Defendant MerchSource had concluded that "all relevant claims are invalid under 35 U.S.C. § 102 and/or § 103. Accordingly, MerchSource will not be paying royalties on any products sold hereafter." Dkt. 98, Sec. Am. Compl., ¶ 32. Although on November 17, 2017 Defendant MerchSource provided a royalty check and royalty report for 2017

7

Q3, (<u>Id.</u>, ¶ 36), it is undisputed that Defendant MerchSource has not paid royalties on products sold after it sent its October 5, 2017 letter.  <u>Id.</u>, ¶¶ 52, 66, 92-94.  Thus, Defendant MerchSource satisfies the <u>Kohle</u> requirements because Defendant MerchSource (1) actually ceased payment of royalties, and (ii) provide notice to Plaintiff Dodocase on October 5, 2015 that the reason for ceasing payment was that it concluded that the relevant claims are invalid.

> **B.**     **Plaintiffs' Argument Regarding a Balancing Approach**

Plaintiffs argue that Defendant MerchSource's motion ignores the need to engage in the balancing approach required under <u>Lear</u>.  Plaintiffs argue that the requirements in <u>Kohle</u> are necessary, but not sufficient, to trigger the <u>Lear</u> doctrine.

To support its position, Plaintiffs cite <u>Hull v. Brunswick Corp.</u>, 704 F.2d 1195 (10th Cir. 1983), for the contention that "the Tenth Circuit agreed that the licensee '[could] not be permitted to avoid royalties accruing during the period of attempted negotiation of the royalty and other provisions of the agreement....'" Dkt. No. 131, Plaintiffs' Opp., at 4 (quoting <u>Hull v. Brunswick Corp.</u>, 704 F.2d 1195, 1204 (10th Cir. 1983).  However, the court in <u>Hull</u> reached this conclusion because during the six months or so of negotiations, the licensee never raised the question of the validity of the patents at issue.  <u>Hull v. Brunswick Corp.</u>, 704 F.2d 1195, 1204 (10th Cir. 1983).

Plaintiffs rely on <u>Bristol Locknut Co. v. SPS Techs., Inc.</u>, 677 F.2d 1277 (9th Cir. 1982), where the licensee stopped paying royalties seven weeks before it filed suit and the court held: "Because its letter to SPS did not prompt the early adjudication of the patents' validity, it remained obligated to pay royalties until it filed this declaratory judgment action to contest the patents' validity." 677 F.2d 1277, 1283 (9th Cir. 1982).  However, in <u>Bristol</u>, the licensee sent a letter explaining it was delaying payment of the fourth quarter 1976 royalties until it received copies of the licensing agreements with other manufacturers and the licensee did not notify the licensor that it was ceasing payment because it was contesting the patents' validity.  <u>Id.</u> at 1281, 1283.

Plaintiffs also rely on the holding in <u>American Sterilizer Co. v. Sybron Corp.</u>, 614 F.2d 890 (3d Cir.), <u>cert. denied</u>, 449 U.S. 825 (1980), where the court found that the licensee was not entitled to <u>Lear</u> protection until it filed suit.  However, the court's conclusion was based on the

finding that "there is nothing in this record to indicate that [the licensee] coupled its non-payment of royalties with notice to [the licensor] that the reason for non-payment was [the licensee's] intent to challenge the validity of the [] patent." Id. at 897.

In PPG Indus. v. Westwood Chem, Inc., 530 F.2d 700 (6th Cir. 1976), the Sixth Circuit held, "The actions of [the licensee] in the present case in ceasing the payment of royalties were not of the type to prompt an early adjudication of invalidity" and that the liability for royalties did not cease as of the date of termination of payments. Id. at 706. However, the Sixth Circuit came to this conclusion because the licensee failed to give notice of any kind and when asked why royalty payments were being withheld, the licensee responded that they would look into it. Id.

Plaintiffs also rely on Jang v. Bos. Sci. Corp., No. EDCV05426VAPMRWX, 2015 WL 13673523, at *8 (C.D. Cal. Mar. 5, 2015). In Jang, Dr. Jang executed an assignment agreement conveying his rights in his patents to Boston Scientific (BSC) in exchange for royalty payments. Id. at 1. Dr. Jang alleged BSC breached the agreement by failing to compensate him for products it sold which were "covered by" the assigned patents. Id. BSC contended that the products at issue did not infringe on Dr. Jang's patents and, thus, it did not owe Dr. Jang payments related to the sales of these products. BSC argued that the court should grant summary judgment based the USPTO's invalidation of certain claims in Dr. Jang's patents because an invalid patent cannot be infringed. Id. at *8.

The court found that "pursuant to Kohle, BSC potentially could be liable for all payments owed from the inception of the Assignment Agreement until it initially took the position that the Jang Patents were invalid in 2006." Id. Further, the court determined that "it would be inequitable for a licensee to, on the one hand, enjoy the rights and protections of the license, and, on the other, seek to shirk those responsibilities when the license payments were due." Id. The court conclude that "this rationale should be extended to the specific factual scenario here: where at least a substantial total of the royalties would have been due sometime in 2007, the assignor cannot avoid payment of those royalties with a finding of invalidity seven years later in 2014." Id. Therefore, BSC was not entitled to summary judgment inasmuch as it argued that Dr. Jang's suit is barred by the USPTO's order invalidating the Jang Patents after the initiation of the instant action.

Id. at *9.  This Court is not persuaded that the court in Jang intended to deviate from the standard articulated in Kohle.  Furthermore, even if the court in Jang intended to find that Dr. Jang was entitled to royalties after BSC first challenged the validity of the patents, the facts in this case are easily distinguishable from the facts in Jang because, in Jang, the licensee was also the assignee of the patent and did not actually seek to invalidate its own patents until 2013.

The Court has reviewed the cases cited by Plaintiffs and found that none of the cases impose additional requirements on a licensee and all of the cases consistently applied the Lear doctrine and the requirements outlined in Kohle.  The Court further notes that Kohle was intended to narrow the Lear doctrine, not expand the doctrine.  Thus, the Court is not persuaded that meeting the requirements outlined in Kohle is not sufficient to invoke Lear under these circumstances.

### C.      No-Challenge Clauses and Bars from Challenging Validity

Plaintiffs' opposition contains a section on "Additional Legal Authority."  Most of the cases in this section do not relate to Lear but, rather, the enforceability of the "no-challenge" clause of the MLA, which was not a topic identified for these motions.  Dkt. No. 123.  Plaintiffs likely invoke these cases to argue that Defendant MerchSource should be prohibited from challenging the validity of the patents at issue, and, thus, unable to invoke the Lear doctrine.  Plaintiffs also use these cases to argue that Lear is not as broad as Defendant MerchSource contends and is not appropriately resolved as a matter of law in this case.  Rather, Lear requires consideration of the unique facts and circumstances.

As an initial matter, Judge Laporte had preliminarily concluded that the no-challenge clause in the MLA was unenforceable as against public policy.  Dkt. No. 52 at 7-8.

In any case, the cases that Plaintiffs cite are distinguishable from the current case because the no-challenge clauses at issue in those cases were contained in settlement agreements, consent decrees, or dismissal orders.  In Flex-Foot, Inc. v. CRP, Inc., the Federal Circuit recognized the "important policy of enforcing settlement agreements and res judicata."  238 F.3d 1362, 1368 (Fed. Cir. 2001).  The Federal Circuit held that "[o]nce an accused infringer has challenged patent validity, has had an opportunity to conduct discovery on validity issues, and has elected to

voluntarily dismiss the litigation with prejudice under a settlement agreement containing a clear

and unambiguous undertaking not to challenge validity and/or enforceability of the patent in suit,

the accused infringer is contractually estopped from raising any such challenge in any subsequent

proceeding." Id. at 1370; see also Baseload Energy, Inc. v. Roberts, 619 F.3d 1357, 1363 (Fed.

Cir. 2010) (finding "[i]n the context of settlement agreements, as with consent decrees, clear and

unambiguous language barring the right to challenge patent validity in future infringement actions

is sufficient, even if invalidity claims had not been previously at issue and had not been actually

litigated"); TMI Prod., Inc. v. Rosen Elecs., L.P., No. EDCV1202263RGKSPX, 2013 WL

12114078, at *6-7 (C.D. Cal. Nov. 27, 2013) (finding that the no-challenge clause contained in the

2009 Agreement barred the licensee from challenging the validity of the patents because the 2009

Agreement was a settlement agreement); Kee Action Sports, LLC, v. Shyang Huei Indus. Co., Ltd,

No. 3:14-CV-00071-HZ, 2015 WL 9581808, at *6 (D. Or. Dec. 30, 2015) (finding that the no-

challenge clause contained in the Restated License Agreement, which resulted from the settlement

of a prior dispute, was not unenforceable as a matter of law).

Furthermore, courts have held that no-challenge clauses in pre-litigation agreements are

unenforceable. See, e.g., Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 167-74 (2d Cir. 2012)

(holding that a no-contest clause contained in a pre-litigation settlement agreement is

unenforceable under Lear); Nat. Alternatives Int'l, Inc. v. Allmax Nutrition, Inc., 258 F. Supp. 3d

1170, 1178 (S.D. Cal. 2017) (same). Here, the no-challenge clause contained in the MLA was not

the result of any prior dispute or litigation between Defendant MerchSource and Plaintiff

Dodocase but was a pre-litigation agreement. Thus, the no-challenge clause is unenforceable

under Lear.

Plaintiffs also cite Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220 (Fed. Cir.

1988), for the contention that "despite the public policy encouraging people to challenge

potentially invalid patents, there are still circumstances in which the equities of the contractual

relationships between the parties should deprive one party (as well as others in privity with it) of

the right to bring that challenge." Id. at 1225. However, again, Diamond Scientific Co. dealt with

a very limited exception not at issue in this case. Recognizing the distinction between assignors

and licensees, the Federal Circuit in <u>Diamond Scientific Co.</u> barred a prior owner of a patent from challenging its validity. <u>Id.</u> at 1224. Here, Defendant MerchSource was not the assignor and was merely a licensee.

### D. Plaintiffs' Facts Allegedly Material to the <u>Lear</u> Inquiry

Plaintiffs contend that this Court must consider the fact that: (1) Defendant MerchSource sought the license without any threat of litigation by Plaintiff Dodocase; (2) Defendant MerchSource vacillated between several different alleged justifications to renegotiate the MLA before and after its October 5th Letter; (3) Defendant MerchSource allegedly equivocated on its vague allegation of patent invalidity, which it intentionally refused to disclose, and its claim to cease payments; (4) Defendant MerchSource delayed adjudication of its alleged invalidity position and attempted to renegotiate the MLA until finally apprising the public of that position on the night of January 15, 2018; and (5) Defendant MerchSource continues to retain protections and benefits of the MLA to the present day. Although the Court has found that none of the cases cited by Plaintiffs impose additional requirements on a licensee seeking to invoke the <u>Lear</u> doctrine, the Court addresses the facts outlined in Plaintiffs' opposition.

First, Plaintiffs state that Defendant MerchSource was the instigator of the MLA. However, none of the cases cited by the parties found that the instigator of the licensing agreement was a relevant consideration in the <u>Lear</u> analysis. As to the no-challenge clause, Plaintiffs acknowledge that the MLA was executed prior to any litigation and, thus, not technically a "settlement" agreement. Dkt. No. 132 at 13. In the cases where courts have upheld a no-challenge clause, the clause was contained in an agreement, consent decree, or dismissal order which was the result of a dispute. <u>Compare</u> <u>Flex-Foot, 238 F.3d at 1370</u> (barring invalidity defense based on settlement agreement), <u>with</u> <u>Massillon-Cleveland-Akron Sign Co. v. Golden State Advertising Co., Inc.,</u> 444 F.2d 425 (9th Cir. 1971) (declining to enforce pre-litigation waiver of invalidity defense). Here, there was no such dispute prior to the parties executing the MLA.

Second, Plaintiffs argue Defendant MerchSource "vacillated between several different alleged justifications to renegotiate the MLA in the summer of 2017, creating a 'boy who cried

12

wolf' scenario for all future discussions." Dkt. No. 132 at 14. However, none of the cases cited state that the subjective belief of the licensor is relevant. Instead, the requirement is merely that the licensee must stop payment of the royalties and clearly notify the licensor that the licensee is challenging the patent's validity.

Third, Plaintiffs claim that MerchSource recanted its October 5, 2017 letter by providing a royalty check and royalty report for Q3 2017 on November 17, 2017 and failing to state that it was ceasing all payments for the Q4 2017 because of its perception of invalidity. Defendant MerchSource argues the Q3 2017 royalties accrued before it sent the October 5, 2017 letter and, thus, the <u>Lear</u> notice would not impact its obligation to pay Q3 2017 royalties. The October 5, 2017 letter clearly stated that "MerchSource will not be paying royalties on any products sold <u>hereafter.</u>" Dkt. No. 98, ¶ 32 (emphasis added). Plaintiffs also claim that the letter did not prompt the early adjudication of the patents' validity because Plaintiff Dodocase did not file suit until ten weeks after receiving the letter. However, as <u>Rite-Nail Packaging Corp.</u> made clear, a licensee need not institute suit challenging the validity of the patent but, rather, clear notification that the licensee is challenging the patent's validity is enough. 706 F.2d 933, 936 (9th Cir. 1983).

Fourth, Plaintiffs state that Defendant MerchSource failed to timely disclose the alleged prior art and invalidity arguments for the benefit of the public because it did not answer the complaint in a timely manner but, instead, requested an extension of time. Further, the parties engaged in settlement discussions but Defendant MerchSource refused to disclose the alleged prior art until the discussions reached an impasse and Defendant MerchSource filed petitions with the PTAB on January 15, 2018. There is a strong public policy favoring the settlement of lawsuits— even those questioning the validity of licensed patents. <u>See</u> <u>Foster v. Hallco Mfg. Co.</u>, 947 F.2d 469, 477 (Fed. Cir. 1991) ("there is a strong public interest in settlement of patent litigation"). As the Court had previously observed, "[i]t is of little surprise that Defendants should try to keep their settlement negotiations confidential and subject to a non-disclosure agreement, as confidential settlement negotiations are the norm." Dkt. No. 52 at 8. The cases cited by Plaintiffs did not turn on when the licensee answered a complaint or filed a suit but, instead, on the fact that the licensee did not properly notify the licensor of their validity challenges. Here, Defendant MerchSource

provided Plaintiff Dodocase with proper notification on October 5, 2015.

Fifth, Plaintiffs argue that Defendant MerchSource continues to retain the protections and benefits of the MLA to the present day because: (1) Defendant MerchSource retains the protections of the MLA's Sell-Off Provision, which allowed Defendant MerchSource to continue to sell products (for 18 months after termination of the MLA), and (2) Defendant MerchSource continues to mark its products with the '075 Patent.

To support their contention, Plaintiffs rely on Kraly v. Nat'l Distillers & Chem. Corp., 502 F.2d 1366 (7th Cir. 1974). In Kraly, the Seventh Circuit affirmed the trial court's ruling, which "keyed the terminal date of [the licensee's] royalty obligation to the date on which [the licensee] stopped marking its product with [the licensor's] patent number." 502 F.2d 1366, 1372 (7th Cir. 1974). The Seventh Circuit stated that the invalidity finding did not relieve the licensee of its obligation to pay royalties for the period in which it was enjoying the benefit of its license and representing to the public that its product was licensed under the patent. Id. However, as Defendant MerchSource notes, Kraly predated Kohle by nearly 23 years. Further, in Precision Shooting Equip. Co. v. Allen, 646 F.2d 313, 319 (7th Cir. 1981), the Court rejected the patentee's argument that it was entitled to all royalties so long as the licensee continues to mark its products with the patentee's patent number. Id. at 320-321.

Besides Kraly, Plaintiffs have not identified any case that requires a licensee to abandon the license in order to avoid royalties during the challenge.

**E.    The Sell-Off Provision of the MLA**

Plaintiffs argue that regardless of if or when Defendant MerchSource gave sufficient notice under the Lear doctrine, Defendant MerchSource is separately liable for all royalties due under the Sell-Off Provision of the MLA. The Sell-Off Provision of the MLA provides:

> Upon termination of any Term Sheet or this Agreement for any reason, MerchSource shall be entitled, for eighteen (18) months (the "Sell-Off Period") after termination, to continue to sell any Licensed Product, that is the subject of a purchase order, is in transit to a customer or MerchSource, or is in inventory with MerchSource at the time of termination. Such sales shall be made subject to all the provisions of the Agreement and any respective Term Sheet, including the payment of royalties which shall be due quarterly until the close of the Sell-Off Period.

Dkt. No. 126-1, ¶ 8.1.6. Plaintiffs argue that this provision prevented Plaintiffs from immediately requesting an injunction after the termination of the MLA to prohibit the sale of products already purchased by Defendant MerchSource. Further, this provision provides MerchSource with a "cap on damages" for otherwise infringing sales that occur for 18 months after termination of the MLA because each sale after termination (for 18 months) will only be subject to the agreed-upon 5% insurance rate of the MLA. Thus, Plaintiffs argue that MerchSource received a "valuable insurance policy." Dkt. No. 131, Plaintiffs' Opp., at 21. Plaintiffs argue that it would be inequitable to allow Defendant MerchSource enjoy the rights and protections of the MLA while seeking to avoid those responsibilities. To support their arguments, Plaintiffs provide the Court with various hypotheticals.

Under the Sell-Off Provision, sales shall be made subject to all the provisions of the MLA including the payment of royalties. Thus, the sell-off royalty payments are merely an extension of the payment that would have been due if the MLA had not been terminated. In Lear, the parties had an agreement that provided that royalties are to be paid until such time as the "patent is held invalid." Lear, Inc. v. Adkins, 395 U.S. 653, 673 (1969). However, the court found that enforcing this contractual provision would be inconsistent with the aims of federal patent policy. Id. Likewise, in Rite-Nail Packaging Corp. v. Berryfast, Inc., 706 F.2d 933, 936 (9th Cir. 1983), the court recognized that "[f]ederal patent policies favoring early adjudication of patent validity prevail over the provisions of state law and private contract in determining whether to award unpaid royalties accrued under an invalid patent." The court further stated, "[p]rovisions of state law or private contract to the contrary notwithstanding, a licensee under an invalid patent may not be required to pay royalties which accrue under the license agreement after the licensee" so long as the licensee take an affirmative step that would prompt the early adjudication of the validity of the patent. Id. Plaintiffs have failed to distinguish royalty payments under the Sell-Off Provision from royalties allegedly accruing under the MLA.

## IV. CONCLUSION

For the reasons stated on the record during the hearing and for those set forth above, the Court GRANTS Defendant MerchSource's motion for declaration of rights and obligations under

Lear, Inc. v. Adkins, 395 U.S. 653 (1969).  The Court finds that Defendant MerchSource provided sufficient Lear notice on October 5, 2017 and that the Lear doctrine applies to all claims for patent royalties accruing after the date of the Lear notice, including royalty payments that resulted from sales during the Sell-Off period under the MLA.

     **IT IS SO ORDERED.**

Dated: January 29, 2020

_____
JOSEPH C. SPERO
United States Magistrate Judge